22201. VILLAGE OF NORTH ATLANTA et al. v. COOK, Attorney General, et al.

Argued September 11, 1963—Decided October 14, 1963.

*James A. Mackay, J. Robin Harris, Roland Neeson,* contra.
*William F. Lozier,* for party at interest not party to record.

Head, Presiding Justice. On May 13, 1963, the Village of North Atlanta, a municipal corporation; the Mayor, members of

the City Council, and City Clerk of North Atlanta; the members of the North Atlanta Charter Committee; and the members of the North Atlanta-DeKalb County Joint Planning Commission; in their official capacity, and individually, filed an action for declaratory judgment and injunction against the DeKalb County legislative delegation composed of Senators W. Hugh McWhorter, Ben F. Johnson, and H. McKinley Conway, Jr., and Representatives James A. Mackay, Guy W. Rutland, Jr., and J. Robin Harris; and the Honorable Eugene Cook, Attorney General. It was alleged that: The charter committee presented a draft of a legislative charter for the Village of North Atlanta to the De-Kalb legislative delegation. This original bill was not passed but a substitute bill was passed. In the original bill the legislative charter was to be submitted to the voters of North Atlanta for approval or rejection. In the substitute bill the voters were given a third choice, that of voting for the surrender of the present charter. The referendum clause of the Act passed by the General Assembly is unconstitutional for stated reasons. The Act imposes on the Mayor and City Council the duty of calling the election. They are advised that the provision requiring a vote on the surrender of the existing superior court charter of the Village of North Atlanta is unconstitutional. "They are therefore confronted with the choice of declining to comply with the direction to call the election under the referendum as now enacted, or of calling it and thereby in effect possibly signing their own official death warrant."

The prayers were for a declaratory judgment as to the constitutionality of the referendum clause of the charter; that the court direct the Mayor, City Council, and City Clerk (all petitioners) not to issue any call for an election until determination of the constitutionality and legality of the provisions objected to; and that the defendants be restrained and enjoined from taking any action for the enforcement of the provisions objected to in the referendum clause.

The trial judge ordered the defendants to show cause on September 10, 1963, why the prayers of the petition should not be granted, and restrained the Mayor, City Council, and City Clerk from issuing any call for the referendum election. Roland Nee-

son, an attorney of DeKalb County, filed an application for leave to appear before the court as amicus curiae, asserting that the charter Act provided that a referendum must be held within ninety days after its approval by the Governor, and that such ninety days would expire before the date set for a hearing on the petition. The trial judge passed an order allowing Neeson to appear as amicus curiae. On May 24, 1963, the trial judge revoked the restraining order previously entered, and ordered the Mayor and Council to issue a call for the election pursuant to the provisions of the Act.

On June 14, 1963, the plaintiffs amended their petition by striking certain paragraphs and inserting in lieu thereof new paragraphs asserting the unconstitutionality of the provision of the Act allowing the voters to vote for the surrender of the charter. It was prayed that Roland Neeson be added as a party defendant.

After a hearing on the matter on June 14, 1963, the trial judge entered an order dismissing the petition, as amended, on the general demurrer of the DeKalb legislative delegation, and the exception is to this judgment.

■ The Constitution, Art. III, Sec. VII, Par. III (*Code Ann.* § 2-1903), in dealing with the legislative department of the State Government, provides as follows: "The members of both Houses shall be free from arrest during their attendance on the General Assembly, and in going thereto, or returning therefrom, except for treason, felony, larceny, or breach of the peace, and no member shall be liable to answer in any other place for anything spoken in debate in either House." This provision is similar to that in the Constitution of the United States in regard to Senators and Representatives in the Congress. *Code* § 1-120. In Kilbourn v. Thompson, 103 U. S. 168, 201-205 (26 LE 377), the immunity provision of the United States Constitution was held to include all of the things generally done in a session of the House of Representatives in relation to the business before it. In Tenney v. Brandhove, 341 U.S. 367 (71 SC 783, 95 LE 1019), in the consideration of an action initiated in the United States District Court for the Northern District of California against members of a California legislative committee, and others, the

Supreme Court of the United States reviewed something of the history of the privilege of legislators to be free from arrest or civil process for what they do or say in legislative proceedings, both in the English Parliament and in the early days of the founding of this nation. It was there stated (p. 377): "The claim of an unworthy purpose does not destroy the privilege. Legislators are immune from deterrents to the uninhibited discharge of their legislative duty, not for their private indulgence but for the public good. One must not expect uncommon courage even in legislators. The privilege would be of little value if they could be subjected to the cost and inconvenience and distractions of a trial upon a conclusion of the pleader, or to the hazard of a judgment against them based upon a jury's speculation as to motives. The holding of this Court in Fletcher v. Peck, 6 Cranch 87, 130, that it was not consonant with our scheme of government for a court to inquire into the motives of legislators, has remained unquestioned."

While we have been unable to find any case in our court in which an action has been brought against State legislators in connection with their legislative acts, this court has uniformly held that the courts will not inquire into the motives of a municipal council in the enactment of an ordinance. *Clein v. City of Atlanta*, 164 Ga. 529 (4) (139 SE 46, 53 ALR 933); *South Ga. Power Co. v. Baumann*, 169 Ga. 649 (151 SE 513); *Barr v. City Council of Augusta*, 206 Ga. 750 (4) (58 SE2d 820).

The allegations of the petition in the present case show no fraud or corruption on the part of the DeKalb County legislative delegation, nor that they exceeded the bounds of their legislative powers in the matters complained of in the petition. It is within the discretion of the General Assembly to amend any proposed legislation presented to it if it deems that such amendment is to the best interest of a majority of those persons affected by the legislation. The fact that members of a legislative delegation might differ with the authors of a proposed bill as to the matters which the bill should include could not make a legal controversy between them which could be resolved by the courts in a declaratory action brought against the legislative delegation. Members of the General Assembly are entitled to immunity against the

harassment of any type of legal action against them in connection with the acts done by them in a strictly official capacity. 81 CJS 946, States, § 35; 49 Am. Jur. 261, States, etc., § 45. They could not properly be made parties defendant in an action for declaratory judgment asserting the unconstitutionality of a provision in an Act of the General Assembly passed at a session of the General Assembly of which they were members, solely on the basis of acts done by them in their official capacity.

It is not contended by the petitioners, nor could such a contention be sustained, that the naming of the Attorney General as a party and serving him with a copy of the proceedings in conformity with the provisions of Ga. L. 1945, pp. 137, 138 (*Code Ann.* § 110-1106) requiring service on the Attorney General when any statute of the State is alleged to be unconstitutional, makes the Attorney General a party adversely interested in the subject matter of the action.

Our Declaratory Judgments Act (Ga. L. 1945, pp. 137-139; Ga. L. 1959, pp. 236-238; *Code Ann. Ch.* 110-11) makes no provision for a declaratory judgment which is merely advisory. *Henderson v. Alverson,* 217 Ga. 541 (123 SE2d 721). The petition as originally filed had no parties against whom any declaration of rights could be made under the Declaratory Judgments Act, and did not state a cause of action for declaratory relief.

■ The only relief sought against the DeKalb legislative delegation besides the declaratory judgment is that they be enjoined "from taking any action for the enforcement" of the provision in the referendum section of the charter that if the majority of the votes cast are for surrender of the present charter of the Village of North Atlanta, "then the General Assembly of Georgia shall at its regular 1964 session abolish the Village of North Atlanta and cause its territory to return to the unincorporated area of DeKalb County." Ga. L. 1963, pp. 3457, 3483.

The Constitution, Art. III, Sec. VII, Par. XX (*Code Ann.* § 2-1920) provides: "The General Assembly shall have the power to make all laws consistent with this Constitution, and not repugnant to the Constitution of the United States, which they shall deem necessary and proper for the welfare of the State." "It follows, therefore, that the General Assembly of this State is absolutely unrestricted in its power of legislation so long

as it does not undertake to enact measures prohibited by the State or Federal Constitution." *Plumb v. Christie,* 103 Ga. 686, 694 (30 SE 759, 42 LRA 181). "One legislature can not lawfully provide that whenever a subsequent legislature enacts a statute with reference to a given subject, such statute shall embrace certain specified provisions. It can not tie the hands of its successors, or impose upon them conditions, with reference to subjects upon which they have equal power to legislate." *Walker v. McNelly,* 121 Ga. 114, 120 (48 SE 718); *Pierce v. Powell,* 188 Ga. 481, 484 (4 SE2d 192); *State Ports Authority v. Arnall,* 201 Ga. 713, 728 (41 SE2d 246).

While the DeKalb legislative delegation would not be required to introduce legislation in the 1964 session abolishing the Village of North Atlanta, although a majority of the voters indicated this preference, neither could they be restrained from exercising their unrestricted power to introduce any proposed legislation which they deem to be for the best interest of their constituents. The petition stated no cause of action for injunction against the DeKalb legislative delegation.

■ It is strongly contended by the petitioners that if the petition did not state a cause of action against the legislative delegation, the amendment praying that Roland Neeson be added as a party defendant supplied a defendant asserting an adverse interest, and that a justiciable controversy then existed. The basis stated in the amendment for naming Neeson as a defendant was that he had filed an application for leave to appear before the court as amicus curiae, in which application he prayed that the court issue a rule absolute in the nature of a mandamus to require the petitioners to call and hold the election in accordance with the provisions of the Act of the General Assembly.

"The literal meaning of the term 'amicus curiae' is a friend of the court, and the term includes persons, whether attorneys or laymen, who interpose in a judicial proceeding to assist the court by giving information, or otherwise, or who conduct an investigation or other proceeding on request or appointment therefor by the court." 4 Am. Jur. 2d 109, Amicus Curiae, § 1. A person appearing as amicus curiae is not a party or privy in an action. *Douglas v. Trust Co. of Ga.,* 147 Ga. 724 (95 SE 219).

■

In the present case no objection is shown by the record to the appearance of Roland Neeson as amicus curiae, and there is no exception in the bill of exceptions to the permission of the court for Neeson to appear in such capacity. The function of an amicus curiae "is to call the court's attention to law or facts or circumstances in a matter then before it that may otherwise escape its consideration . . . He has no control over the litigation and no right to institute any proceedings therein, he must accept the case before the court with the issues made by the parties." 4 Am. Jur. 2d 110, 111, Amicus Curiae, § 3. The mere fact that Roland Neeson appeared as amicus curiae was not sufficient basis for making him a party defendant in the action for declaratory judgment. No other relief is prayed against him, and none is authorized under the allegations of the petition as amended.

The amendment added nothing material to the cause of action attempted to be asserted against the original defendants, and no renewal of their demurrer was necessary. *Code* § 81-1312. The trial judge properly sustained the general demurrer of the De-Kalb County legislative delegation.

The order dismissing the petition as amended was entered on the same date that the amendment seeking to name an additional party defendant was filed. The trial judge should either have disallowed the amendment, or given reasonable time (*Code* § 81-1312) to Roland Neeson to demur or otherwise object to the amendment. Since the amendment did not state a cause of action against Roland Neeson, under the circumstances of this case we will not reverse the judgment dismissing the petition as amended, although no demurrer or other objection thereto had been filed by Roland Neeson.

*Judgment affirmed. All the Justices concur.*