Jeremiah STAMLER, M.D. and Yolanda F. Hall, Plaintiffs,

and

Milton M. Cohen, Intervening Plaintiff,

v.

Hon. Edwin E. WILLIS, Hon. John M. Ashbrook, Hon. Del Clawson, Hon. Joe R. Pool, Hon. Charles L. Weltner, Hon. William M. Tuck, Hon. Richard H. Ichord, Hon. George F. Senner, Jr., and Hon. John H. Buchanan, Jr., Individually and as Chairman and Members of the Committee on Un-American Activities of the United States House of Representatives, Defendants.

Nos. 65 C 800, 65 C 2050.

United States District Court
N. D. Illinois, E. D.

June 26, 1968.

Appeal Dismissed Nov. 25, 1968.

See 89 S.Ct. 395.

---

Albert E. Jenner, Jr., Thomas P. Sullivan, Lael F. Johnson, Raymond, Mayer, Jenner & Block, Chicago, Ill., Arthur Kinoy, Kunstler, Kunstler & Kinoy, New York City, of counsel, for plaintiffs.

Richard Orlikoff, Chicago, Ill., for intervening plaintiff.

Edward V. Hanrahan, U. S. Atty., Chicago, Ill., for defendants.

## MEMORANDUM OF DECISION

Before CUMMINGS, Circuit Judge, and HOFFMAN and NAPOLI, District Judges.

HOFFMAN, District Judge.

The plaintiffs, Jeremiah Stamler, M.D., and Yolanda F. Hall, and the intervening plaintiff, Milton M. Cohen, (hereinafter referred to as "plaintiffs") brought two actions against the chairman and members of the Committee on Un-American Activities of the United States House of Representatives. The Committee had scheduled hearings at Chicago, Illinois, for May 25 through May 27, 1965, and the plaintiffs were subpoenaed to appear and give testimony.

The first action brought by the plaintiffs challenged the constitutionality of the Legislative Reorganization Act of 1946, 60 Stat. 812, 828 (1946) which embodies Rule XI of the Rules of the House of Representatives establishing the charter of the House Un-American Activities Committee. A three-judge District Court was requested under 28 U.S.C. §§ 2283, 2284 and the plaintiffs prayed for an injunction restraining the members of the committee from conducting any hearings and taking any action to enforce the subpoenas served upon the plaintiffs. The action was dismissed by the District Court for lack of substantial federal question under Barenblatt v. United States, 360 U.S. 109, 79 S.Ct. 1081, 3 L.Ed.2d 1115 (1959) and the application for a three-judge Court was denied.

The Committee conducted the scheduled hearings and the plaintiffs attended but refused to testify. The plaintiffs then commenced a second action, again challenging the constitutionality of House Rule XI and requesting the convocation of a three-judge District Court. The plaintiffs prayed for a temporary and permanent injunction against the operation, enforcement or execution of House Rule XI and against the future prosecution of the plaintiffs for contempt of Congress under 2 U.S.C. § 192.

House Rule XI provides, in pertinent part:

"The Committee on Un-American Activities, as a whole or by subcommittee, is authorized to make from time to time investigations of (1) the extent, character, and objects of un-American propaganda activities in the United States, (2) the diffusion within the United States of subversive and un-American propaganda that is instigated from foreign countries or of a domestic origin and attacks the principle of the form of government as guaranteed by our Constitution, and, (3) all other questions in relation thereto that would aid Congress in any necessary remedial legislation."

The complaint alleged that this Rule is illegal and void as applied to the plaintiffs, and as utilized by the defendants and their predecessors in the past, in that it violates the First, Fifth, Ninth and Tenth Amendments to the United States Constitution.

Without reaching the question of the substantiality of the constitutional issues, the District Court denied the application for a three-judge Court and dismissed the complaint for lack of justiciable controversy. The Court found that the plaintiffs lacked standing to raise the constitutional challenge to House Rule XI since they were not in the direct focus of the Rule. The Court concluded that the criminal prosecution feared by the plaintiffs was not possible until the full House of Representatives considered the facts and the Speaker of the House certified the facts to the United States Attorney and directed him to bring the matter of contempt before the grand jury. 2 U.S.C. § 194. The District Court also noted that criminal prosecution could be instituted only by the United States which was not a party to the action.

Appeals from the decisions of the District Court in both actions were taken to the Court of Appeals for the Seventh Circuit. The reviewing court reversed upon concluding that in deciding the question of justiciability in the second action the District Court had improperly considered the merits of the plaintiffs' claim and that both complaints presented a substantial constitutional question.

*Stamler v. Willis,* 371 F.2d 413 (7th Cir. 1966). The Court stated:

"The complaints alleged generally that the interpretation of section 18 of Rule XI as expressed by the continued conduct of the Subcommittee of the House Un-American Activities Committee attributes a meaning to the rule which renders it unconstitutional, and that this conduct consisted of the exposure of witnesses, including plaintiffs, to public scorn and obloquy and harassment and intimidation of these witnesses without any legislative purpose but rather to chill and deter them and others in the exercise of their first amendment rights.

"These allegations raise a substantial constitutional question not foreclosed by the Supreme Court in Barenblatt v. United States, 360 U.S. 109, 79 S.Ct. 1081, 3 L.Ed.2d 1115 (1959)." 371 F.2d at 414.

The Court also noted that the complaints alleged, at least formally, a basis for equitable relief and that the requirements of the three-judge statute had been met. The cases were remanded to the District Court with directions to grant the requests for a three-judge Court.

After remand, the three-judge District Court was appointed and the cases were consolidated for trial. During the summer of 1967 the plaintiffs moved for a temporary restraining order preventing the defendants from seeking to secure indictments against them for violations of 2 U.S.C. § 192. The motion was presented to the single District Judge who was advised that the previous fall the Speaker of the House of Representatives had certified facts constituting the alleged illegal conduct of the plaintiffs to the United States Attorney and that the Attorney General and the United States Attorney were going to present the alleged contempt charges to the grand jury. While this motion was under advisement, the plaintiffs moved for leave to file a First Supplement to the Complaints indicating the action taken by the House of Representatives and

for leave to add the United States Attorney and the Attorney General as parties defendant. Leave to file the Supplement was granted but the motion to add additional parties was denied. Thereafter the single Judge denied the motion for a restraining order and the plaintiffs were indicted for contempt of Congress in violation of 2 U.S. C. § 192. The initiation of the criminal prosecutions was pleaded in a Second Supplement to the complaints and the plaintiffs prayed for an injunction against the prosecutions. Leave to file the Second Supplement and to add the Attorney General and the United States Attorney as parties defendant was allowed. The criminal actions are pending.

The Congressional defendants moved to dismiss the complaints as supplemented and that motion was denied. All the defendants then answered and filed a motion for summary judgment and several discovery motions which were taken under advisement. Next the Congressional defendants moved to stay discovery and to dismiss the actions for lack of jurisdiction on the ground that they are immune from suit under the Speech or Debate Clause, United States Constitution, Article 1, § 6, Clause 1. All nine Congressional defendants filed Claims of Privilege and Exemption from Suit. The cases are now before the Court for decision on the motion of all defendants for summary judgment, two discovery motions and the Congressional defendants' motion to stay discovery and dismiss the complaints.

The issue raised by the pending motion to dismiss the actions as to the Congressional defendants is the availability to them of the immunity granted legislators under the Speech or Debate Clause. That Clause provides: "[F]or any Speech or Debate in either House [the members of Congress] shall not be questioned in any other place." The defendants urge their claimed immunity as a jurisdictional impediment to the present actions which seek injunctive relief against them based on alleged legitimate legislative activities. Reliance is

placed on the opinion of Judge Burger in Powell v. McCormack, 395 F.2d 577 (D.C.Cir. Feb. 28, 1968). In that case the plaintiff, Member-Elect Adam Clayton Powell, Jr., brought suit against several members of the 90th Congress to restrain the enforcement, operation or execution of House Resolution No. 278 whereby Member-Elect Powell was excluded from membership in the 90th Congress, and to restrain the defendants and the full House of Representatives from taking any action to enforce House Resolution No. 278. Judge Burger reached the conclusion that the Speech or Debate Clause operated as a bar to the maintenance of Mr. Powell's suit.

The Speech or Debate Clause has been the subject of only four Supreme Court decisions: Kilbourn v. Thompson, 103 U.S. 168, 26 L.Ed. 377 (1880); Tenney v. Brandhove, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951); United States v. Johnson, 383 U.S. 169, 86 S.Ct. 749, 15 L.Ed.2d 681 (1966); and Dombrowski v. Eastland, 387 U.S. 82, 87 S.Ct. 1425, 18 L.Ed.2d 577 (1967). These cases teach that the Clause confers personal immunity on members of Congress to protect the legislative process in our system of government, and that the Clause must be read broadly to effectuate its purposes. Under these cases Congressmen are insulated from criminal sanction and civil liability if they are engaged in legitimate legislative activity such as the conduct of Congressional committee hearings. However, the Supreme Court has not decided the questions raised by the present motion to dismiss. Those questions are whether the legislative immunity provided by the Speech or Debate Clause may be asserted in an action seeking only equitable relief and a declaratory judgment, and in an action brought to redress a deprivation of First Amendment rights.

The nature of the remedy sought by a litigant does not determine whether the legislator engaged in legitimate legislative activity shall be called to answer before the Judiciary. The Clause must operate to prevent intimidation by the executive and accountability before a possibly hostile judiciary. United States v. Johnson, supra, 383 U.S. at 181, 86 S.Ct. 749. The doctrine of immunity should protect the legislator not only from the consequences of the results of the litigation, but also from the burden of defending himself. Dombrowski v. Eastland, supra, 387 U.S. at 85, 87 S.Ct. 1425. The Clause itself is the only constitutional provision wherein the doctrine of separation of powers is explicit and its history indicates that any matter concerning either House of Congress should be examined and adjudged in the House to which it relates, and not elsewhere. The precedents, the history of the provision and the required broad reading of the Clause dictate the conclusion that the kind of relief prayed against the legislator has no effect on the availability of the defense of immunity.

The conflict between First Amendment rights and legislative action was examined in Bond v. Floyd, 385 U.S. 116, 87 S.Ct. 339, 17 L.Ed.2d 235 (1966). In that case the question was whether a state House of Representatives could constitutionally exclude a duly elected Representative from membership because of his statements criticizing the policy of the Federal Government. The Court found that the disqualification of the plaintiff Bond from the Georgia House of Representatives violated the plaintiff's right of free expression under the First Amendment. The basis of the Court's decision was the First Amendment requirement that legislators be given the widest latitude to express their views on issues of policy. However, the defendants did not raise the issue of legislative immunity under the equivalent of the Speech or Debate Clause in the Georgia Constitution and the Court did not consider the collision of the plaintiff's First Amendment rights as a legislator and the defendants' similar rights under a specific constitutional provision.

In the cases at bar, we are confronted with an asserted deprivation

of First Amendment rights and the constitutional doctrine of legislative immunity. We find that the freedom of expression protected by the Speech or Debate Clause outweighs the similar protection of the First Amendment. The mandate of the Speech or Debate Clause is explicit: A member of Congress shall not be required to answer in the courts for any speech within the scope of his legislative activity. If that speech impinges upon another's First Amendment rights, the former must prevail. The balance of the rights pleaded by the parties favors the Congressional defendants.

The more vital question presented by the motion to dismiss is whether the Congressional defendants were engaged in legitimate legislative activity. The Congressional defendants have been charged with "pillorying" the plaintiffs and other witnesses who have appeared before the Committee, exposing them to public scorn and obloquy, harassment and intimidation with the purpose of deterring them and others ·in the exercise of their First Amendment rights. Further the plaintiffs complain that the continued conduct of the Committee members attributes a meaning to House Rule XI which renders it unconstitutional.

■■ Essentially the plaintiffs challenge the motive of the defendants. The Court cannot act on this challenge and probe the motivation of the individual legislator; "[t]he claim of an unworthy purpose does not destroy the [Speech or Debate] privilege." Tenney v. Brandhove, supra, 341 U.S. at 377, 71 S.Ct. at 788. Rather, in determining whether the defendants were engaged in legitimate legislative activity, the Court should only determine whether the Committee's inquiry may fairly be deemed within its province. The Supreme Court has held:

"Investigations, whether by standing or special committees, are an established part of representative government. Legislative committees have

been charged with losing sight of their duty of disinterestedness. In times of political passion, dishonest or vindictive motives are readily attributed to legislative conduct and as readily believed. Courts are not the place for such controversies. Self-discipline and the voters must be the ultimate reliance for discouraging or correcting such abuses. The courts should not go beyond the narrow confines of determining that a committee's inquiry may fairly be deemed within its province. To find that a committee's investigation has exceeded the bounds of legislative power it must be obvious that there was a usurpation of functions exclusively vested in the Judiciary or the Executive." Tenney v. Brandhove, supra at 377–378, 71 S.Ct. at 789.

■ We reach the conclusion that the Chicago hearings conducted by the defendants may fairly be deemed within the province of the Committee. The transcripts of the hearings are attached as exhibits to the complaint filed in the second action and the defendants have filed, in support of the motion for summary judgment, copies of the House reports certifying the facts leading to the Committee request that the plaintiffs herein be cited for contempt and including the underlying resolution and authority of the subcommittee the Attorney General and the United States Attorney is ancillary to the claims against the Congressional defendants and the actions will be dismissed as to the Attorney General and the United States Attorney. The remaining motions will be denied as moot.

CUMMINGS, Circuit Judge (dissenting).

The majority rests its decision on the Speech or Debate Clause contained in Article I, Section 6, Clause 1 of the Constitution, providing "The Senators and Representatives * * * for any Speech, Debate in either House * * *

shall not be questioned in any other Place." [1] This clause is derived from the 1689 English Bill of Rights providing:

"That the freedom of Speech and Debate or proceedings in Parliament ought not to be impeached or questioned in any Court or Place out of Parliament."

This privilege was chiefly intended to protect members of Parliament from criminal charges and libel or slander actions. See United States v. Johnson, 383 U.S. 169, 182, 86 S.Ct. 749, 15 L.Ed. 2d 681; The Bribed Congressman's Immunity from Prosecution, 75 Yale L.J. 335, 341–342 (1965).

In this country, a similar clause in the Massachusetts Constitution of 1780 was first construed in Coffin v. Coffin, 4 Mass. 1, 27 (1808), a slander suit, as enabling members of the legislature "to execute the functions of their office without fear of prosecutions, civil or criminal." At two other places in his opinion, Chief Justice Parsons refers to freedom from "prosecutions." Of course, prosecutions are not involved in the present suit for injunctive and declaratory relief.

The Supreme Court's first consideration of the Speech and Debate Clause came in Kilbourn v. Thompson, 103 U.S. 168, 169, 26 L.Ed. 377, where it was deemed to give members of a congressional committee a defense against a suit for damages brought by a person imprisoned for failure to answer certain committee questions and to produce books and papers sought by the committee. In *Kilbourn*, the Court refused to limit this constitutional provision to words spoken in debate, but nevertheless confined its decision to "what is necessary to the case at hand," stating:

"It is not necessary to decide here that there may not be things done, in the one House or the other, of an extraordinary character, for which the members who take part in the act may be held legally responsible." See 103 U.S. pp. 204–205.

The next Supreme Court consideration of this clause came in another suit where the plaintiff sought damages from members of a legislature. Tenney v. Brandhove, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019. There Justice Frankfurter concluded that the clause applied to immunize legislators from such actions if "from the pleadings it appears that the defendants were acting in the sphere of legitimate legislative activity" (at p. 376, 71 S.Ct. at p. 788). After stating that the purpose of the clause was to free members of the legislatures from "criminal and civil liability," the *Tenney* opinion adhered to the caveat expressed in the *Kilbourn* case that members of the legislature might be held responsible for doing things "of an extraordinary character" (at pp. 375, 378, 71 S.Ct. 783).

The Supreme Court again considered this clause in United States v. Johnson, 383 U.S. 169, 86 S.Ct. 749, 15 L.Ed.2d 681, where it was applied to bar a criminal prosecution against a former congressman. Again the Court was careful to limit its holding to the circumstances presented (at p. 185, 86 S.Ct. 749).

The last Supreme Court consideration of this clause occurred in the *per curiam* opinion in Dombrowski v. Eastland, 387 U.S. 82, 87 S.Ct. 1425, 18 L.Ed.2d 577, another damage action. The Court reiterated the *Tenney* concept that legislators should be protected from the burden of defending themselves when engaged "in the sphere of legitimate legislative activity" (p. 85, 87 S.Ct. p. 1427). In contrast, here the Congressional defendants are being fully defended by the Government, as provided by 2 U.S.C. § 118, with no possibility of monetary liability.

[1] By not raising this privilege or immunity in their Answer, which raised nine affirmative defenses, the Congressional defendants have waived it. But since the majority has seen fit to pass upon the merits of this defense, it will also be considered in this dissent.

This review of the leading authorities construing the Speech or Debate Clause shows that until today no court has applied it to an action seeking injunctive or declaratory relief. It is true that in Powell v. McCormack, 395 F.2d 577 (D. C. Cir. 1968), Judge Burger concluded that the clause applied to an action seeking equitable relief, but neither Judge McGowan nor Judge Leventhal agreed with him, and they reached certain aspects of the merits of the *Powell* complaint.

In my view, the immunity extended by the Speech or Debate Clause is limited to judicial proceedings in which individual legislators are sought to be rendered personally liable, civilly or criminally, for activities stemming from a privileged range of conduct. The immunity does not extend to actions for declaratory and injunctive relief in which, as here, Congressmen are only parties in their official capacity.

As explained in United States v. Johnson, supra, p. 180, 86 S.Ct. 749, the state legislators' privilege is on a parity with the federal privilege arising from the Speech or Debate Clause. In fact, at least 43 states have constitutional provisions equivalent to that clause. (See Tenney v. Brandhove, supra, at p. 375, 71 S.Ct. 783, note 1; Alaska Const., Art. II, § 6; Hawaii Const., Art. III, § 8.) Despite such state constitutional provisions, injunctive relief has often been accorded against members of state legislatures, showing that injunctive relief is also not barred by the Speech or Debate Clause of the federal Constitution. Thus in Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22, it was held that the plaintiffs were entitled to declaratory and injunctive relief against the chairman of a joint committee of the legislature and others. A few years later, in Bond v. Floyd, 385 U.S. 116, 87 S.Ct. 339, 17 L. Ed.2d 235, the Court again held that a plaintiff was entitled to declaratory and injunctive relief against members of a state legislature even though the Supreme Court of Georgia had interpreted its Speech or Debate Clause as barring actions for declaratory relief against legislators. Village of North Atlanta v. Cook, 219 Ga. 316, 133 S.E.2d 585 (1963). The rationale of the *Dombrowski* and *Bond* decisions applies equally to members of the United States House of Representatives.

Similarly, in Liveright v. Joint Committee, 279 F.Supp. 205, 215 (M.D.Tenn. 1968), an injunction was entered against members of a joint committee of the Tennessee Assembly and other members of the legislature, restraining them from proceeding under a vague and overbroad resolution (narrower than Rule XI) authorizing the investigation of the Highlander Research Center of Knox County. To like effect, see Bush v. Orleans Parish School Board, 191 F.Supp. 871 (E.D.La.1961), affirmed, Denny v. Bush, 367 U.S. 908, 81 S.Ct. 1917, 6 L.Ed.2d 1249; Jordan v. Hutcheson, 323 F.2d 597, 601–602 (4th Cir. 1963).

Thus in the foregoing cases, the Supreme Court and other federal courts have approved declaratory and injunctive relief against legislators. The instant decision is the first known Speech or Debate Clause ruling to the contrary.

Under the allegations of this complaint, the House Committee on Un-American Activities has engaged in a consistent course of conduct whose effect is to stifle freedom of association and criticism of the government.[2] The Speech or Debate Clause was designed to encourage just such criticism. Its prophylactic purpose reflected "the central importance to our political system of uninhibited political expression as guaranteed to the general populace by the First and Fourteenth Amendments." United States v. Johnson, supra, 383

---

**2.** Unlike Tenney v. Brandhove, supra, the motives of these Congressional defendants are nowhere challenged. It is the effect of their conduct that is at issue here, not their motives.

U.S. at p. 182, 86 S.Ct. at p. 756, note 12. Its purpose should not be subverted by employing it to deny relief to these plaintiffs. This is especially true when the clause has never before been applied to actions for injunctive or declaratory relief in the nearly 180 years of its operation. In fact, the novelty of the Government's position is shown by its not having raised this clause during the first two and one-half years this case has been pending!

Even assuming *arguendo* the correctness of Judge Burger's views in Powell v. McCormack, that case is not controlling here. There the relief sought would force the seating of Congressman-Elect Powell, whereas if these plaintiffs should prevail on the merits, Congress could enact a narrower enabling Act and continue its investigations thereunder. In *Powell*, the plaintiff had no alternative way of presenting his constitutional claim in a judicial proceeding, whereas here the majority opinion admits that these plaintiffs' constitutional claims can be entertained in their criminal trials. If they should prevail on this point in those trials, the result would in effect be a judicial decision that Rule XI is unconstitutionally broad, the very result sought here. An unfavorable decision here would signify no less respect for a coordinate branch of the Government than would a like decision in the criminal prosecutions. The fact that plaintiffs can test the issues presented here in their criminal prosecutions is no reason to deny them standing in this proceeding. Flast v. Cohen, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947. As Judge Medina observed in Wolff v. Selective Service Local Board No. 16, 372 F.2d 817, 824–825 (2d Cir. 1967):

"Where basic constitutional rights are imperiled, the courts have not required a series of injured parties to litigate the permissible scope of the statute or administrative interpretation but have nullified the unconstitutional action and required the Government to start in the first instance with a statute or interpretation that will not so overhang free expression that the legitimate exercise of constitutionally protected rights is suppressed."

There Dombrowski v. Pfister, supra, was applied to prevent federal interference with First Amendment rights (372 F.2d at p. 824).

In sum, the Speech or Debate Clause protects legislators from imprisonment or money judgments that would adversely affect their ability to perform their Congressional duties. But if these plaintiffs were to prevail in this case, the defendant members of Congress would not be impeded in their Congressional functions but merely have to conduct their future investigations under a narrower, constitutional mandate. Thus permitting this action to proceed will have no chilling effect on the legislators' performance of their duties. Cf. Note, 78 Harv.L.Rev. 1473, 1475 (1965).

The Court of Appeals for this Circuit has previously recognized the different impact of damages and injunctive actions, stating as follows in Adams v. City of Park Ridge, 293 F.2d 585, 587 (7th Cir. 1961):

" * * * the case at bar is not an action for damages for torts committed. It looks to the future only and asks for a declaratory judgment and an injunction against invasions of plaintiffs' federal constitutional rights contemplated by a municipality's ordinance. None of the reasons which supports a city's immunity from an action for damages for tortious injuries already inflicted by its officers, agents or servants applies to this case. No reason is apparent why a city and its officials should not be restrained from prospectively violating plaintiffs' constitutional rights pursuant to its own legislative enactment, and an injunction not be granted, as provided in § 1983."

Similarly here, the reasons supporting Congressional immunity in criminal prosecutions or in damage actions do

not apply to this case. Cf. Flast v. Cohen, 392 U.S. 83, 112, n. 6, 88 S.Ct. 1942, 1959 (concurring opinion).

By belated resort to the Speech or Debate Clause, this Court should not evade the mandate of Stamler v. Willis, 371 F.2d 413 (7th Cir. 1966), holding that this complaint presents a substantial constitutional question, and that the breadth of Rule XI should be measured against this Committee's conduct over the years. Cf. Watkins v. United States, 354 U.S. 178, 198, 202, 77 S.Ct. 1173, 1 L.Ed.2d 1273; Gojack v. United States, 384 U.S. 702, 711–712, 86 S.Ct. 1689, 16 L.Ed.2d 870. The *Stamler* opinion contemplated that this judicial re-examination was to occur in this proceeding rather than in subsequent criminal proceedings. By settling the questions raised by this complaint in this civil proceeding, future interference with Committee activity would be eliminated. Unlike the now pending criminal prosecutions, more suitable discovery procedures and more liberal rules of evidence are available here to throw light on the serious constitutional questions presented. These questions are surely weighty enough to call for adjudication by three judges rather than a single judge hearing the criminal cases. Moreover, direct Supreme Court resolution is available upon appeal from the judgment on the merits by this 3-judge court. See Zemel v. Rusk, 381 U.S. 1, 5–7, 85 S.Ct. 1271, 14 L.Ed.2d 179. Defendants have not shown why defense of this proceeding would be significantly more burdensome than would their cooperation in the prosecution of these plaintiffs under 2 U.S.C. § 192.

These plaintiffs, like those in Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, should be permitted to raise these questions in a civil proceeding not inhibiting the full exercise of their First Amendment rights. They should not have to go through years of criminal litigation as in Gojack v. United States, 384 U.S. 702, 86 S.Ct. 1689, where the defendant had to stand trial twice, was convicted twice, appealed unsuccessfully twice, obtained a new trial from the Supreme Court and finally the dismissal of charges against him in the Supreme Court.

Even more than in Dombrowski v. Pfister, supra, these plaintiffs are entitled to an adjudication of their civil complaint. There the allegedly overbroad statute was new and had not been judicially construed, so that any threat to free expression might have been obviated *ad limine*. Here it is alleged that the interpretation put on Rule XI during the approximately 30 years of the Committee's existence exacerbates the overbreadth of the Rule, and it has already been held that plaintiffs' allegations raise a substantial constitutional question (Stamler v. Willis, supra). Therefore, *Dombrowski* surely requires this Court to permit this civil litigation to proceed.

In denying the Government's motion to dismiss, this Court has already determined that plaintiffs' claims should be considered on their merits even though a coordinate branch of the Government is involved. The judiciary has always borne the basic responsibility for protecting individuals against unconstitutional invasions of their rights by all branches of the Government.[3] Thus the Supreme Court has overturned a major policy decision of the President because he exceeded his powers in seizing the steel mills. Youngstown Sheet & Tube Co. v. Sawyer, 343 U.S. 579, 72 S.Ct. 863, 96 L.Ed. 1153. More recently, the Court has ruled that an Act of Congress designed to prevent members of the Communist Party from holding jobs in defense facilities, and action taken pursuant to that Act by the Secretary of Defense, was unconstitutional because it placed a greater restraint on First Amendment freedoms than was necessary to guard against espionage and

3. See Legislative Exclusion; Julian Bond and Adam Clayton Powell, 35 Univ. of Chi.L.Rev. 151, 164–166 (1967).

744

sabotage. United States v. Robel, 389 U.S. 258, 88 S.Ct. 419, 19 L.Ed.2d 508. Although the Speech or Debate Clause protects individual legislators against personal liability for their legislative acts, it cannot foreclose judicial inquiry into the constitutionality of the Committee of which they are members. The Congress has no more right, whether through legislation or investigations conducted under an overbroad enabling Act, to abridge the First Amendment freedoms of the people than do the other branches of government, "For free expression—of transcendent value to all society, and not merely to those exercising their rights—might be the loser." Dombrowski v. Pfister, supra, at p. 486, 85 S.Ct. at p. 1121.

As shown in the *Tenney* case, and reiterated in Dombrowski v. Eastland, supra, the Speech or Debate Clause was meant to apply to legislators engaged in the sphere of legitimate legislative activity. In Stamler v. Willis, 371 F.2d 413 (7th Cir. 1966), the Court decided there was a substantial question whether these legislators were so engaged. In that vein, this Court has already unanimously denied the Government's motion to dismiss and permitted limited discovery and should not now back-track from the forthright position previously taken merely to avoid passing upon the difficult and weighty questions presented.

The majority states that the action against the Attorney General and the United States Attorney must fall with the action against the Congressional defendants because the actions against the former are "ancillary." But as early as Stockdale v. Hansard, 9 Ad. & El. 1 (1839), and certainly by the time of Kilbourn v. Thompson, supra, it was clearly established that liability, including personal tort liability, could be imposed on an official for following orders given to him by the Congress, even though the Congressmen could not be held. This is exactly what happened to the Sergeant-at-Arms of the House in *Kilbourn*. The principle was recently

reaffirmed in Dombrowski v. Eastland, 387 U.S. 82, 87 S.Ct. 1425, 18 L.Ed.2d 577, where the Supreme Court ordered that a tort action go to trial as against Senate Subcommittee Counsel Sourwine, while at the same time dismissing the action as against Senator Eastland. There is therefore no legal bar to the continuation of this action as against defendants Clark and Foran. I would hold that this action should proceed against the Congressional defendants as well.

For these reasons, I am unable to join in the judgment order being entered.