**THIRD DIVISION**
**MCFADDEN, C. J.,**
**DOYLE, P. J., and HODGES, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**October 29, 2020**

# In the Court of Appeals of Georgia

A20A0934, A20A0935, A20A0936, A20A0937. DAWSON COUNTY BOARD OF COMMISSIONERS et al. v. DAWSON FOREST HOLDINGS, LLC and vice versa (four cases).

McFADDEN, Chief Judge.

In *Lathrop v. Deal*, 301 Ga. 408 (801 SE2d 867) (2017), our Supreme Court reconsidered the law of sovereign immunity and held that the doctrine of sovereign immunity extends generally to suits against the state, its departments and agencies, and its officers in their individual capacities for injunctive and declaratory relief from official acts that are alleged to be unconstitutional. In so holding, however, the Court recognized the availability of other means by which aggrieved citizens may obtain relief from unconstitutional acts, including prospective relief from the threatened

enforcement of unconstitutional laws. Id. at 409. The question before us today is how, under *Lathrop*, a landowner may challenge the constitutionality of a zoning classification. The trial court correctly held that, where enforcement authority is reposed in a county commission, claims for declaratory and injunctive relief may be brought against the commissioners in their individual capacities to prevent its enforcement.

After the Dawson County Board of Commissioners ("the Board") denied its rezoning requests, Dawson Forest Holdings, LLC ("Dawson Forest") brought two actions in the superior court against the Board[1] and against its commissioners in both their official and individual capacities. In the actions, which were substantively the same except as to the specific property at issue,[2] Dawson Forest asserted that the current zoning classification was unconstitutional and sought prospective relief to

---

[1] The trial court found that the Board was a proper defendant in these cases, and that ruling has not been challenged in these appeals.

[2] Consequently the parties have filed appeals and cross-appeals in both cases, yielding substantively identical sets of briefs. In such instances, it would be extremely helpful if parties would tell us whether or not there are substantive differences in their briefs. Alternately, under Court of Appeals Rule 23 (a), "Parties may adopt, and are encouraged to adopt, all or a portion of another brief in the case or from another case pending in this Court. The party adopting language from another brief shall specify precisely what portion of the other brief the party is adopting and list the case number, if different."

prevent its enforcement. The defendants moved to dismiss the actions, asserting among other things that the doctrines of sovereign immunity and legislative immunity barred the actions and that the complaints failed to state a claim upon which relief could be granted. These related appeals and cross appeals concern the trial court's rulings dismissing the actions against the Board and its commissioners in their official capacities (Cases No. A20A0936 and A20A0937) but declining to dismiss the actions against the commissioners in their individual capacities (Cases No. A20A0934 and A20A0935).

As detailed below, the trial court did not err in any of her rulings. Sovereign immunity bars the actions against the Board and its commissioners in their official capacities. But neither sovereign immunity nor legislative immunity bars the actions for prospective relief against the commissioners in their individual capacities for allegedly unconstitutional acts, and the complaints stated claims for such prospective relief. So we affirm in all four cases.

1. *Facts and procedural history.*

On review of the trial court's rulings on the motions to dismiss, we accept as true all well-pled material allegations in the complaints and resolve any doubts in favor of Dawson Forest. *Williams v. DeKalb County*, 308 Ga. 265, 270 (2) n. 3 (840

3

SE2d 423) (2020). Dawson Forest alleged the following facts in their first amended complaints.

In 2016, Dawson Forest filed with the Dawson County Planning and Development Department applications seeking to rezone property that it owned from a Residential Agricultural (R-A) classification to a Residential Multi-Family (RMF) classification. The county's planning and development director recommended that the Board approve the rezoning requests, subject to certain conditions, finding that the proposed use of the properties conformed to the county's Comprehensive Plan and Future Land Use Map, was suitable and consistent with surrounding land uses, would be in keeping with the welfare of the community, and would promote the health, safety, morals, and general welfare of the public interest. The Board, however, denied the rezoning requests.

Dawson Forest then filed actions in superior court challenging the constitutionality of the properties' R-A zoning classification. It took the position in those actions that the denial of the rezoning applications was void ab initio because the county did not follow certain mandatory requirements contained in its Land Use Resolution. On September 25, 2017, the superior court entered consent orders remanding the rezoning applications to the county for reconsideration.

4

Later in 2017, Dawson Forest submitted revised rezoning applications for the properties. At that time, it also delivered to the Board "Constitutional Objections" asserting that the continued classification of the properties as R-A would violate Dawson Forest's rights under the state and federal constitutions.

The revised applications were "filed in accordance with all applicable laws, [were] complete, met all applicable requirements, and [were] duly processed for review by the Planning Department." There was no substantive difference between those revised applications and the applications filed in 2016; they sought the same reclassification and proposed the same site plans. Nevertheless, the county's planning director made different findings regarding the appropriateness of rezoning than he had made in response to the 2016 applications, and he recommended that the 2017 revised applications be denied.

In January 2018, after a public hearing on the applications, the Board voted to deny the applications, leaving in place the R-A zoning classification of the properties. As a result of this classification, Dawson Forest "cannot economically or feasibly develop or sell the [properties]" and has been "deprive[d] . . . of any reasonable use and development of the [properties]."

Among other things, the Board has the power to implement and enforce the county's zoning laws. Dawson Forest asserted in its complaints that it will be harmed by the Board and its commissioners' continued, unconstitutional imposition and enforcement of the R-A zoning classification on the properties. Dawson Forest sought relief in the form of a declaration by the trial court that the denial of the rezoning applications and the continued enforcement of the R-A zoning classification of the properties are unconstitutional; an injunction prohibiting enforcement of the current land use restrictions on the properties; a writ of mandamus directing the Board and the commissioners to rezone the properties "to a constitutional zoning classification"; and attorney fees and expenses of litigation.

The trial court granted in part and denied in part the defendants' motions to dismiss Dawson Forest's claims. She dismissed all of the claims against the Board and against the commissioners in their official capacities on the ground that the doctrine of sovereign immunity barred those claims. She dismissed the claim for writ of mandamus against the commissioners in their individual capacities on the ground that Dawson Forest had adequate legal remedies to challenge the constitutionality of the zoning restrictions on its properties. But she denied the motion to dismiss the claims for declaratory and injunctive relief against the commissioners in their

individual capacities, as well as the derivative claims for attorney fees and costs of litigation, concluding that the complaints sufficiently stated those claims and the claims were not barred by any immunity.

In Cases No. A20A0934 and A20A0935, we granted interlocutory appellate review to the commissioners, who challenge the rulings denying the motions to dismiss the claims against them in their individual capacities. In Cases No. A20A0936 and A20A0937, Dawson Forest cross-appeals, challenging the rulings dismissing the claims for declaratory and injunctive relief against the Board and the commissioners in their official capacities. (Dawson Forest does not challenge the dismissal of its mandamus claim. ) As detailed below, we find no error in any of these rulings.

2. *Sovereign immunity bars the claims for declaratory and injunctive relief against the Board and the commissioners in their official capacities.*

We first address Dawson Forest's challenge to the trial court's conclusion that the doctrine of sovereign immunity bars the claims for declaratory and injunctive relief against the Board and against the commissioners in their official capacities (as well as the derivative claims). We find no error in that conclusion in light of our

7

Supreme Court's decision in *Lathrop v. Deal*, supra, 301 Ga. 408. The Court held in

*Lathrop* that

> [t]he constitutional doctrine of sovereign immunity bars any suit against the [s]tate to which it has not given its consent, including suits against state departments, agencies, and officers in their official capacities, and including suits for injunctive and declaratory relief from the enforcement of allegedly unconstitutional laws. If the consent of the [s]tate is to be found, it must be found in the Constitution itself or the statutory law. . . . There are, however, prospective remedies that [a] plaintiff[ ] may pursue against state officers in their individual capacities.

Id. at 444 (IV). Dawson Forest's claims fall within the rule articulated in *Lathrop* —

the claims seek injunctive and declaratory relief from the enforcement of an allegedly

unconstitutional ordinance (the zoning classification as applied to the properties)

against the Board and its Commissioners in their official capacities. See generally

*Harry v. Glynn County*, 269 Ga. 503 (1) (501 SE2d 196) (1998) (counties are entitled

to sovereign immunity); *Bd. of Commrs. of Glynn County v. Johnson*, 311 Ga. App.

867, 868 (1) (717 SE2d 272) (2011) (county commissioners are entitled to sovereign

immunity in suits against them in their official capacities).

Nevertheless, Dawson Forest argues that the doctrine of sovereign immunity, in particular its application to constitutional challenges seeking injunctive or declaratory relief as described in *Lathrop*, does not apply to zoning cases. "[A] 'zoning case' is a case involving a decision by an administrative agency dealing with the zoning or allowed use of a particular parcel of land." *Schumacher v. City of Roswell*, 301 Ga. 635, 638 (2) (803 SE2d 66) (2017) (punctuation omitted). The *Lathrop* holding does not exempt zoning cases, and in a subsequent decision involving a zoning case, our Supreme Court cited *Lathrop* in finding that the trial court would need to address a sovereign immunity issue on remand. *Kammerer Real Estate Holdings v. Forsyth County Bd. of Commrs.*, 302 Ga. 284, 285 (1) n. 2 (806 SE2d 561) (2017). Cf. *Carson v. Brown*, 348 Ga. App. 689, 705 (2) (b) & n. 55 (824 SE2d 605) (2019) (citing *Lathrop* to hold that the trial court did not err in ruling that sovereign immunity barred an action seeking a declaration that a county's moratorium on certain land-disturbance applications was unconstitutional but declining to decide whether it would bar a claim for declaratory or injunctive relief regarding the enforcement of the moratorium brought against county employees in their individual capacities because the plaintiff did not assert such a claim).

9

Moreover, under our state constitution, "[t]he sovereign immunity of the state and its departments and agencies can *only* be waived by an Act of the General Assembly which specifically provides that sovereign immunity is thereby waived and the extent of such waiver." Ga. Const. of 1983, Art. I, Sec. II, Par. IX (e) (emphasis supplied). Although in its appellate brief Dawson Forest refers to the "long (undisturbed) legislative history" of zoning cases, it cites to no constitutional or statutory authority waiving sovereign immunity on the ground that an action was a zoning case. Instead, Dawson Forest points to zoning cases that pre-date *Lathrop*. It also suggests that we infer from another of our Supreme Court's decisions, *Diversified Holdings v. City of Suwanee*, 302 Ga. 597 (80 SE2d 876) (2017), that sovereign immunity does not bar the actions here. But *Diversified* does not address the issue of sovereign immunity at all; it is merely an instance in which the trial court and our Supreme Court addressed the merits of a constitutional challenge to the denial of a rezoning petition. See id. at 598-599, 605-614 (I), (III), (IV). The parties to this appeal debate the meaning of *Diversified*'s silence on the issue of sovereign immunity. But a decision of our Supreme Court "is not precedent for a point it does not actually address and resolve," *Ga. Dept. of Human Svcs. v. Addison*, 304 Ga. 425, 434 (4) n. 9 (819 SE2d 20) (2018), so *Diversified* is not precedent for the applicability

10

of sovereign immunity in zoning cases. Moreover, our Supreme Court has "repeatedly refused invitations to invent exceptions" to the rule that, under Georgia's Constitution, "only the General Assembly [may] waive the [s]tate's sovereign immunity." *Bd. of Commrs. of Lowndes County v. Mayor & Council of the City of Valdosta*, __ Ga. __ (__ SE2d __) (Case No. S20G0472, decided Sept. 28, 2020). We decline to infer from *Diversified*'s silence on sovereign immunity that such an exception exists in zoning cases.

3. *Legislative immunity does not bar the claims against the commissioners in their individual capacities.*

The commissioners argue that the trial court should have dismissed the claims against them in their individual capacities because legislative immunity bars those claims. We disagree.

"[L]egislative immunity for local officials arises from statutes or from common law." *Williams*, 308 Ga. at 279 (4) (d). Georgia courts have held that "[i]ndividuals acting in a legislative capacity are absolutely immune from suit." *Saleem v. Snow*, 217 Ga. App. 883, 886 (1) (b) (460 SE2d 104) (1995) (physical precedent only) (citing *Village of North Atlanta v. Cook*, 219 Ga. 316 (133 SE2d 585) (1963)). See *Whipple v. City of Cordele*, 231 Ga. App. 274, 276 (3) (499 SE2d 113) (1998) (citing *Bogan*

11

*v. Scott-Harris*, 523 U. S. 44, 48-54 (II) (118 SCt 966, 140 LE2d 79) (1998), for proposition that "local legislators are entitled to absolute immunity in performing their legislative functions"). And our Supreme Court has held that commissioners perform a legislative function when they act in their capacity as a zoning body to consider a rezoning request. *Speedway Grading Corp. v. Barrow County Bd. of Commrs.*, 258 Ga. 693, 695 (2) (373 SE2d 205) (1988). See *Bentley v. Chastain*, 242 Ga. 348, 349 (1) n. 3 (249 SE2d 38) (1978) ("zoning power, vested in the county governing authority, is legislative").

Dawson Forest argues that, under our Supreme Court's 2017 decision in *Diversified Holdings*, supra, 302 Ga. 597, "a rezoning decision affecting a particular piece of property may no longer be considered a legislative act." The Court in *Diversified* held, for the purpose of determining the proper procedure for seeking appellate review, that "[a] landowner's challenge that seeks recognition that a zoning ordinance is unlawful with respect to a particular parcel of land . . . is the type of individualized application of law to facts and circumstances that constitutes an adjudicative decision" rather than a legislative act. Id. at 603 (II). We need not resolve that issue, however, because assuming the commissioners' votes against rezoning the properties *were* legislative acts, the commissioners are not entitled to

12

legislative immunity in these cases. This is because Dawson Forest's claims do not arise from the commissioners' past votes on the properties' zoning classifications. Instead, their claims for declaratory and injunctive relief arise from the commissioners' anticipated future enforcement of allegedly unconstitutional zoning classifications.

The complaints, viewed in Dawson Forest's favor, see *Williams*, 308 Ga. at 270 (2), allege that the commissioners wear two hats — as decision-makers voting on the rezoning petitions (which for purposes of argument we will refer to as the "legislative hat") and as enforcers of already-established zoning classifications (which we will refer to as the "enforcement hat"). Dawson Forest's claims concern the commissioners' acts while wearing their enforcement hats, not their legislative hats. The claims seek non-monetary, declaratory, and injunctive relief from future enforcement by the commissioners of the allegedly unconstitutional zoning classification of its properties — the very type of prospective remedies that our Supreme Court described in *Lathrop*, 301 Ga. at 444 (IV).

It is true that the *Lathrop* decision leaves open the possibility that legislative immunity could bar a suit for prospective relief brought against officials in their individual capacities. *Lathrop*, supra at 435 (III) (C) n. 25. But we are not persuaded

13

that legislative immunity would bar a suit seeking relief against officials for acts taken while wearing their *enforcement*, rather than legislative, hats. Cf. *Village of North Atlanta v. Cook*, 219 Ga. 316, 320-321 (2) (133 SE2d 585) (1963) (legislative immunity bars claim seeking to enjoin certain state legislators from introducing legislation to enforce a previously-passed referendum alleged to be unconstitutional). With one possible exception, discussed below, none of the authorities cited by the commissioners for the imposition of legislative immunity address a situation, such as we have in these cases, where the officials are alleged to be wearing an enforcement rather than legislative hat.

*Goldrush II v. City of Marietta*, 267 Ga. 683 (482 SE2d 347) (1997), does discuss such a situation. But that discussion sheds no light on these cases. Requests for a declaratory judgment on the constitutionality of a city ordinance and injunctive relief against its enforcement were among the issues in *Goldrush II*. Id. But *Goldrush II* does not stand for the proposition that claims like those before us today, which seek prospective relief against unconstitutional acts, must be dismissed on the ground of legislative immunity. Much of the decision addressed the ordinance's constitutionality, and the Court ultimately concluded that the ordinance was *not* unconstitutional. Id. at 693 (5). The Court did also address legislative immunity: "The

14

mayor and city council members are not individually liable as there is no evidence they acted oppressively, maliciously, corruptly or without authority of law so as to divest themselves of legislative immunity. OCGA §§ 36-33-1; 51-1-20." *Goldrush II*, supra at 699 (12). But neither of the statutes cited by *Goldrush II* as sources of legislative immunity apply to these cases. See OCGA § 36-33-1 (b) (establishing immunity for municipal corporations); OCGA § 51-1-20 (a) (establishing immunity for certain defendants against civil *liability* in certain situations). See generally *Lathrop*, 301 Ga. at 442 (III) (C) (noting that term "liability" often refers to monetary damages). Moreover, given the Court's conclusion in *Goldrush II* that the ordinance was not unconstitutional, we do not construe the above-quoted sentence as support for the proposition that legislative immunity would bar the types of claims mentioned in *Lathrop* — claims for prospective declaratory and injunctive relief against enforcement of unconstitutional laws by officials in their individual capacities. See *Lathrop*, 301 Ga. at 444 (IV).

The commissioners offer no persuasive argument that the *enforcement* of a previously-established zoning classification is a legislative act, choosing instead to focus their appellate arguments on their act of voting on the rezoning petitions. But at this stage we must construe the complaints most favorably to Dawson Forest,

15

meaning that we must construe them as claims for prospective remedies against the commissioners' enforcement of the allegedly unconstitutional classifications, not on their earlier votes in connection with those classifications. Were we to hold that legislative immunity barred claims for prospective remedies regarding the act of enforcement, that would leave Dawson Forest with no recourse against the allegedly unconstitutional zoning classifications. Our Supreme Court has recognized that courts have a role in considering the constitutionality of zoning decisions. See *Speedway Grading Corp.*, 258 Ga. at 695 (2). We decline to apply legislative immunity in a way that would foreclose such consideration.

4. *The complaints stated claims against the commissioners in their individual capacities.*

The commissioners argue that the complaints failed to state claims against them in their individual capacities and so the trial court should have dismissed the claims for injunctive and declaratory relief, and the derivative claims for attorney fees, under OCGA § 9-11-12 (b) (6). A motion to dismiss under OCGA § 9-11-12 (b) (6)

> should not be sustained unless (1) the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof; and (2) the movant establishes that the claimant could not possibly introduce

16

> evidence within the framework of the complaint sufficient to warrant a grant of the relief sought.

*Williams*, 308 Ga. at 270 (2) (citations and punctuation omitted). Reviewing the trial court's rulings on the commissioners' motions de novo, and construing the allegations of the complaints as described above in Division 1, see id., we find no error.

As discussed above, the complaints, viewed most favorably to Dawson Forest, claimed that the commissioners were empowered to enforce the current, allegedly unconstitutional zoning classifications on the properties. Dawson Forest's claims against the commissioners in their individual capacities for the prospective remedies of declaratory judgment and injunction to stop this enforcement fall squarely within the type of claims contemplated by our Supreme Court in *Lathrop*, 301 Ga. at 444 (IV). So we are not persuaded by the commissioners' argument that the complaints' claims were really brought against the commissioners in their official, rather than individual, capacities. See *Bd. of Commrs. of Lowndes County*, __ Ga. at __ (3) (rejecting real-party-in-interest argument to hold that claim for prospective declaratory and injunctive relief was properly brought against officials in their individual, rather than official, capacities); *GeorgiaCarry.Org v. Bordeaux*, 352 Ga. App. 399, 403-404 (4) (834 SE2d 896) (2019) (rejecting argument that claim against

17

probate court judge for declaratory and injunctive relief regarding his issuance of weapons carry licenses had to be brought against judge in his official rather than individual capacity, holding that "where [s]tate officers or agents are sued personally, the suit is generally maintainable for acts done in violation of a statute, or under an unconstitutional statute, or for acts otherwise unauthorized and illegal") (citation and punctuation omitted).

Likewise, we are not persuaded by the commissioners' argument that the action cannot be brought against them in their individual capacities because the commissioners only act on zoning matters as a collective body, not as individuals. The commissioners are conflating two distinct meanings of the word "individual." The meaning of "individual" relevant to our analysis is part of the expression "individual capacity," which is a term of art in the context of sovereign immunity law — not the more common usage of that word as a synonym for "singular." Indeed, in *Bd. of Comm'rs of Lowndes County*, __ Ga. at __ (3), our Supreme Court permitted an action for prospective relief to proceed against members of a state board of community affairs in their individual capacities. While the Court did not address the precise argument asserted here, its analysis of the claims against the board members

in their individual capacities turned in part on the authority of the board as a body to take certain actions. See id.

Contrary to the commissioners' argument, Dawson Forest was not required to allege specific actions already taken by the commissioners. Even if no enforcement action has yet been undertaken, Dawson Forest "has standing to pursue a declaratory action where the threat of an injury in fact is actual and imminent, not conjectural or hypothetical." *Polo Golf & Country Club Homeowners Assn. v. Cunard*, 306 Ga. 788, 791 (a) (b) (833 SE2d 505) (2019) (citations and punctuation omitted). Similarly, Dawson Forest may seek an injunction against a threatened act. See OCGA § 9-5-1. Of course, Dawson Forest will have to "show that the person[s] it has sued [are] the one[s] committing the act at issue," *Bd. of Commrs. of Lowndes County*, __ Ga. at __ (3) (citation and punctuation omitted), namely the threatened enforcement of the properties' zoning classifications. But "[a]t this time, it cannot be said that the allegations of the complaint[s] disclose with certainty that [Dawson Forest] would not be entitled to relief under *any* state of provable facts asserted in support." *Austin v. Clark*, 294 Ga. 773, 775 (755 SE2d 796) (2014) (emphasis in original). To the extent that the identity of the commissioners serving on the Board changes, "we leave it for the trial court to sort out . . . whether [Dawson Forest] may amend its complaint[s] to

name other defendants in their individual capacities, in the first instance." *Bd. of Commrs. of Lowndes County*, __ Ga. at __ (3) n. 8.

*Judgments affirmed. Doyle, P. J., and Hodges, J., concur*.