A05A0572. LANCASTER et al. v. EFFINGHAM COUNTY et al.
(615 SE2d 777)

MILLER, Judge.

Richard Lancaster and other Effingham County taxpayers sued the county and members of its Board of Commissioners (the Board) in connection with the county's efforts to construct a water treatment facility to serve unincorporated areas. The taxpayers claimed that the Board took several unauthorized actions relating to the purchase and sale of land, the rezoning of certain property, the calling of meetings, and the designation of land tracts for the water treatment plant. Both the taxpayers and the Board moved for summary judgment. The trial court granted the Board's motion and denied the taxpayers' motion. Enumerating several errors, the taxpayers appeal this ruling. We discern no error and affirm.

On appeal from the grant or denial of a motion for summary judgment, we conduct a de novo review of the law and evidence, viewing the evidence in the light most favorable to the nonmovant, to determine whether a genuine issue of material fact exists and whether the moving party was entitled to judgment as a matter of law. *Holbrook v. Stansell*, 254 Ga. App. 553, 553-554 (562 SE2d 731) (2002).

So viewed, the evidence reveals that in a public meeting on March 18, 2003, the Board voted to purchase 500 acres of land for the purpose of constructing a water treatment plant. Although the county needed only 200 acres for the water treatment facility, the Board agreed to purchase the entire 500 acres because the seller did not wish to subdivide the land and the Board believed that the purchase was in the county's best interests. The county obtained a bank loan for the $3 million purchase price, due for repayment by December 30, 2003.

During another public meeting on October 21, 2003, the Board declared that 287 of the purchased 500 acres were surplus, and voted to sell those extra acres. The Board intended to use the proceeds from the sale to repay the $3 million bank loan.

On December 23, 2003, the Board held another meeting, where a 2003 budget amendment was to be discussed. The county gave a proper public notice of this meeting, but the notice did not indicate that the Board would also discuss using money from a general reserve

fund to repay the bank loan for the purchased 500 acres. The bank loan was due on December 30, and the general reserve funds had not been dedicated for any other use. In this same meeting, the Board also accepted a bid from Greenway Developers (Greenway) to purchase the 287-acre surplus for $2,990,810. The contract of sale, however, was contingent upon Greenway's petition for appropriate rezoning and approval of a master plan by the county and the Board. Since the sale could not be finalized before December 30, the Board borrowed money from the general reserve fund to pay off the bank loan with the idea that the reserve fund could later be replenished by the proceeds from the sale to Greenway.

On April 19, 2004, the Board held a public hearing to consider Greenway's application for rezoning of the 287 acres. At the end of the hearing, the Board voted 6 to 2 to approve the rezoning application.

Lancaster and other taxpayers sued the Board, claiming that their actions in connection with the purchase of the 500 acres and subsequent sale and rezoning of the surplus 287 acres were improper. The Board and the taxpayers moved for summary judgment, and the trial court granted the Board's motion. The taxpayers appeal.

1. The taxpayers claim that the trial court erred in granting summary judgment to the Board because the Board's purchase of 500 acres for the water treatment plant when only 200 acres were needed was ultra vires and therefore void. We disagree.

Under the Georgia Constitution, a county has the inherent power to provide for the "[d]evelopment, storage, treatment, purification, and distribution of water." Ga. Const. of 1983, Art. IX, Sec. II, Par. III (a) (7). In connection with such power, a county may "acquire, by gift, purchase, or the exercise of the right of eminent domain, lands, easements, rights in lands, and water rights" to create systems and plants that are "useful in connection with the collection, treatment, and disposal of sewage, waste, and storm water." OCGA §§ 36-82-61 (4) (C) (ii); 36-82-62 (a) (1). A county has broad discretion in determining the manner and extent to which it will acquire property for its use, and county actions taken in good faith will not be disturbed by the courts. See *Threatt v. Fulton County*, 266 Ga. 466, 471 (6) (467 SE2d 546) (1996); *Ledbetter Bros., Inc. v. Floyd County*, 237 Ga. 22, 23-24 (2), (3) (226 SE2d 730) (1976); *Miles v. Brown*, 223 Ga. 557, 558 (156 SE2d 898) (1967).

The undisputed evidence reveals that the Board purchased the 500 acres of land in the good-faith belief that it would be both financially favorable to the county and useful as a site for a new water treatment plant. The taxpayers have presented no evidence that the Board purchased the property in an attempt to benefit either the seller of the 500-acre parcel or the buyer of the 287-acre surplus. The

trial court did not err in granting summary judgment to the Board on this claim. See, e.g., *Ledbetter Bros., Inc.*, supra, 237 Ga. at 23-24 (2), (3).

2. In two enumerations, the taxpayers contend that the Board illegally amended its 2003 budget by failing to give proper notice that its December 23, 2003 meeting would involve discussions about borrowing money from the general reserve fund to pay the bank note. We disagree.

A local government may "amend[ ] its budget so as to adapt to changing governmental needs during the budget period." OCGA § 36-81-3 (d). Moreover, the "[f]ailure to include on the [public meeting] agenda an item which becomes necessary to address during the course of a meeting shall not preclude considering and acting upon such item." OCGA § 50-14-1 (e) (1).

Here, the Board gave proper notice of the meeting to amend the 2003 budget in accordance with the Open Meetings Act. See OCGA § 50-14-1 (d). There is no evidence that the Board intentionally omitted the general reserve fund discussion from the agenda prior to the meeting for the purpose of deceiving the public. This omission, moreover, did not preclude the Board from discussing this issue and acting upon it at the meeting. OCGA § 50-14-1 (e) (1). The evidence reveals that the bank note for the 500 acres was due within days of the meeting, and in light of the governmental needs at that time, the county was authorized to amend its budget to meet those needs. See OCGA § 36-81-3 (d). The trial court properly granted summary judgment to the Board on these claims.

3. The taxpayers argue that the Board's action of borrowing money from the general reserve fund to pay off the bank note for the 500 acres violated the provisions of the Service Delivery Act, which ensures that "the cost of any service which a county provides primarily for the benefit of the unincorporated area of the county shall be borne by the unincorporated area residents, individuals, and property owners who receive the service." OCGA § 36-70-24 (3) (A). This argument is without merit.

Although the general reserve fund consisted of monies from both incorporated and unincorporated areas, the evidence reveals that the ultimate cost of the land used for the water treatment facility would not be borne by the residents of incorporated areas. The general reserve fund had not been earmarked for any specific purpose, and the money borrowed from the fund was replenished by funds from the sale of the surplus 287 acres. Ultimately, the county was able to obtain over 200 acres of land for a water treatment plant at virtually no cost. The taxpayers' contention that this fiscally responsible outcome somehow damaged them is without merit.

4. In two enumerations, the taxpayers contend that the Board improperly rezoned the 287-acre surplus in connection with the Greenway sale. However, the evidence reveals that none of the taxpayers in this case lived adjacent to or would be uniquely affected by the rezoned 287 acres. Thus the taxpayers do not have standing to challenge zoning decisions made with respect to the property. See *Garden Hills Civic Assn. v. MARTA*, 256 Ga. App. 367, 367-369 (1) (568 SE2d 586) (2002); see also *Miller v. Fulton County*, 258 Ga. 882, 883 (1) (375 SE2d 864) (1989). These enumerations are therefore without merit.

5. To the extent that the taxpayers attempt to hold any of the Board members individually liable for their actions in this case, such efforts fail as a matter of law. As we have held above, the actions of the Board were not unauthorized. The Board members exercised their discretion in connection with their official duties. Since there is no evidence that the Board members carried out their duties with malice or intent to cause injury, they are immune from personal liability. See Ga. Const. of 1983, Art. I, Sec. II, Par. IX (d); OCGA § 50-21-22 (5) (State's waiver of sovereign immunity does not extend to counties under the Georgia Tort Claims Act).

*Judgment affirmed. Blackburn, P. J., and Bernes, J., concur.*

DECIDED MAY 24, 2005 —
RECONSIDERATION DENIED JUNE 7, 2005 —

Spivey, Carlton & Edenfield, J. Franklin Edenfield, Glen A. Cheney, DuAnn C. Davis, for appellants.

Zipperer & Lorberbaum, Eric R. Gotwalt, Balch & Bingham, J. Matthew Maguire, Jr., Michael J. Bowers, Kicklighter & Persse, Claude M. Kicklighter, Jr., for appellees.