308 Ga. 265
FINAL COPY

S19A1163.  WILLIAMS v. DEKALB COUNTY et al.

ELLINGTON, Justice.

Edward Williams appeals from an order of the Superior Court of DeKalb County, which dismissed his second amended complaint with prejudice. Acting pro se, Williams sued DeKalb County and members of its governing authority, the Chief Executive Officer and the DeKalb County Board of Commissioners, in their official and individual capacities (collectively, "Appellees").[1] In his complaint, Williams challenged in a variety of ways the legality of a DeKalb County ordinance, which increased the salaries of the members of the county governing authority, setting forth claims for mandamus, declaratory and injunctive relief, criminal and civil penalties for violating the Open Meetings Act, and attorney fees and costs of

---

[1] The individual defendants are Michael Thurmond (the Chief Executive Officer) and Nancy Jester, Jeff Rader, Larry Johnson, Kathie Gannon, and Gregory Adams (the commissioners). The Board of Commissioners and the Chief Executive Officer "shall constitute the governing authority of DeKalb County[.]" Ga. L. 1981, p. 4304, § 1 (b).

litigation. Following a hearing, the trial court denied Williams' petition for mandamus and granted Appellees' motion to dismiss Williams' remaining claims, ruling that his claims for declaratory and injunctive relief against the County were barred by the doctrine of sovereign immunity, that he had failed to state a claim for a declaratory judgment or for injunctive relief against the Chief Executive Officer and the commissioners in their individual capacities, and that he failed to state a claim under the Open Meetings Act against the commissioners in their individual capacities and that those claims were barred by the doctrines of official and legislative immunity.

On appeal,[2] Williams contends that the trial court erred in dismissing his claims for declaratory and injunctive relief against the members of the governing authority in their individual capacities for acting unlawfully in increasing their own pay. He

---

[2] Thomas V. Burch, Director of the Appellate Litigation Clinic of the University of Georgia School of Law, and his students John Lex Kenerly and Addison Smith, represented Williams on appeal pro bono. This Court thanks them for their service.

argues that the trial court erred in dismissing his claim that the County Home Rule Paragraph of the Georgia Constitution, see Ga. Const. of 1983, Art. IX, Sec. II, Par. I, precludes county governing authorities from having the power to increase their own pay. Williams also argues that, even if the General Assembly can statutorily delegate the power to county governing authorities to increase their own pay, see OCGA § 36-5-24, the salary ordinance is still invalid because the commissioners did not follow the statute's guidelines and because the statute's guidelines were insufficient to prevent a conflict of interest. We do not reach the merits of these claims of error because, as discussed in Division 3, Williams lacks standing to sue the members of the governing authority for declaratory relief, he lacks standing to sue the commissioners for injunctive relief, and whether he has standing to seek injunctive relief against Thurmond requires proper analysis by the trial court on remand.

Williams also contends that the trial court erred in dismissing his claims against the commissioners for violating the Open

Meetings Act, see OCGA § 50-14-1 et seq., before passing the salary ordinance, making them individually liable for civil penalties under the Act. For the reasons set forth in Division 4, we agree.

Thus, we affirm those portions of the court's order dismissing Williams' claim for declaratory judgment against the members of the governing authority and for injunctive relief against the commissioners; we vacate that portion of the trial court's order dismissing Williams' claim for injunctive relief against Thurmond; we reverse that portion of the court's order dismissing Williams' claim against the commissioners for civil penalties under the Open Meetings Act; and we remand the case to the trial court.

1. *Facts and Procedural History*. Williams alleged the following facts in his second amended complaint.[3] At about 2:00 p.m. on January 18, 2018, the DeKalb County Board of Commissioners

---

[3] Appellees dispute many of Williams' factual allegations, but on review of the trial court's ruling on a motion to dismiss, those claims must be taken as true. See *Greene County School Dist. v. Circle Y Constr.*, 291 Ga. 111, 112 (728 SE2d 184) (2012). (The appellate court "review[s] de novo the trial court's ruling on the [defendants'] motion to dismiss, accepting as true all well-pled material allegations in the complaint and resolving any doubts in favor of [the plaintiff].").

announced that it would hold a "special call" meeting at 9:00 the following morning. The printed meeting agenda did not include a proposed pay increase for the commissioners or the Chief Executive Officer, but the commissioners discussed the desire for a pay increase at the meeting. The meeting minutes did not record the discussion, nor did they record any vote to take official action based on the discussion. The minutes also did not reflect the reason for calling the meeting on less than 24 hours' notice. About a week later, in an e-mail exchange with the subject line "Salary Meeting Follow-Up," the Board's presiding officer asked the Board's attorney to contact the Champion Newspaper, the legal organ of the county, and place an advertisement giving statutorily required notice of the intent to increase the salaries of the governing authority.[4] The Board's attorney arranged for the notice to be published on three

---

[4] See OCGA § 36-5-24 (b) (2) ("A county governing authority shall take no action to increase salary, compensation, expenses, or expenses in the nature of compensation until notice of intent to take such action and the fiscal impact of such action has been published in a newspaper designated as the legal organ of the county at least once a week for three consecutive weeks immediately preceding the meeting at which the action is taken[.]").

consecutive Mondays, February 8, 15, and 22, 2018, giving notice of the County's intent to increase the salary and other compensation of the governing authority at the regular meeting of the Board to be held on February 27, 2018, with the fiscal impact of the change estimated to be approximately $229,660.22 per year. The agenda published for the February 27 meeting, however, did not list the proposed salary ordinance or otherwise mention increasing the Chief Executive Officer's or commissioners' pay.

Well into the February 27 meeting, a commissioner moved to add the proposed salary increase to the agenda as a "walk-on" resolution, and the commissioners voted unanimously to add the salary ordinance to the agenda. The fiscal impact statement for the ordinance reflected that the Chief Executive Officer's pay would be set at 90 percent of a DeKalb County superior court judge's total compensation, and that the commissioners' base salary would increase from $40,530.55 to $65,000, effective January 2, 2019. Six commissioners voted in favor of the resolution, and one voted against it.

Williams, who is a citizen and taxpayer of DeKalb County, filed his complaint in August 2018. He claimed that the commissioners violated the Open Meetings Act by not giving proper notice of their intent to pass the pay increase, thus invalidating the increase and subjecting the commissioners to civil and criminal penalties. He also claimed that, even though the General Assembly had given county governing authorities the power to increase their members' pay through OCGA § 36-5-24 (b), the Georgia Constitution and the DeKalb County Organizational Act precluded the commissioners from having the power to increase their pay. Williams asked the trial court to order mandamus, declaratory, and injunctive relief; to impose civil and criminal penalties under the Open Meetings Act; and to award attorney fees and litigation costs.

In January 2019, the trial court held a hearing to address both Williams' request for mandamus relief and Appellees' motion to dismiss.[5] After the hearing, the trial court denied Williams' petition

---

[5] Williams did not request a jury trial. Instead he asked the court to issue a mandamus nisi for a "show cause" hearing to determine whether a writ of

for mandamus and granted Appellees' motion to dismiss.[6] With

---

mandamus should be issued. The court granted the request and set the hearing for January 10, 2019.

[6] The trial court denied Williams' petition for mandamus relief because he failed to introduce into evidence a certified copy of the salary ordinance during the nisi hearing. Williams does not challenge the trial court's denial of mandamus relief on appeal. Appellees, however, continue to argue that, because Williams failed to attach a certified copy of the ordinance to his complaint, the trial court properly dismissed his claims for injunctive and declaratory relief, even though the trial court did not consider any evidence with respect to those claims during the hearing. When presented with a motion to dismiss for failure to state a claim, a court must examine the sufficiency of the *pleadings. Kammerer Real Estate Holdings v. Forsyth County Bd. of Commrs.*, 302 Ga. 284, 286 (806 SE2d 561) (2017). In considering the pleadings, "all well-pleaded material allegations of the opposing party's pleading are to be taken as true, and all allegations of the moving party which have been denied are taken as false." (Citation and punctuation omitted.) *Sherman v. Fulton County Bd. of Assessors*, 288 Ga. 88, 90 (701 SE2d 472) (2010). Further, "[i]f, within the framework of the complaint, *evidence may be introduced* which will sustain a grant of relief to the plaintiff, the complaint is sufficient." (Citation omitted; emphasis supplied.) *Austin v. Clark*, 294 Ga. 773, 775 (755 SE2d 796) (2014). In ruling on Appellees' motion to dismiss, the trial court was authorized to consider the exhibits attached to and incorporated into Williams' complaint by reference. *Stendahl v. Cobb County,* 284 Ga. 525, 526 (1) n.2 (668 SE2d 723) (2008) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes and, if incorporated into the pleadings, may be considered when deciding a motion to dismiss for failure to state a claim without converting the motion into one for summary judgment." (citations and punctuation omitted)). Cf. *Trop, Inc. v. City of Brookhaven*, 296 Ga. 85, 89 (764 SE2d 398) (2014) (The trial court was authorized to consider ordinances attached as exhibits to pleadings on a motion for judgment on the pleadings, and in doing so, did not convert the motion to dismiss into a motion for summary judgment.). The record shows that Williams incorporated into his complaint by reference a copy of the salary ordinance, which was attached as an exhibit to each complaint, including Williams' original verified complaint. Williams thus pled the existence and content of the ordinance; moreover, he demonstrated that, within the framework of the

respect to Williams' claim that the county governing authority lacked the power to pass an ordinance raising its own members' pay, the trial court held that Williams lacked standing to seek prospective injunctive or declaratory relief because, as a result of the ordinance, he suffered no "particularized injury" nor were his "individual rights" implicated. The court held that the General Assembly did not violate the DeKalb County Organizational Act or the Georgia Constitution when it gave county governing authorities, through OCGA § 36-5-24, the power to increase their members' pay. Finally, the court found that the commissioners followed the procedures set forth in OCGA § 36-5-24 when passing the ordinance increasing their salaries.

With respect to Williams' claims under the Open Meetings Act, the court held that the commissioners are not subject to liability for

---

complaint, a certified copy of the ordinance may be introduced at trial or during an evidentiary proceeding to prove the ordinance. Thus, for the purpose of a motion to dismiss, Williams sufficiently pled the ordinance. *Stendahl*, 284 Ga. at 526 (1) n.2.

civil penalties under the Act.[7] First, the court held that official immunity protected the commissioners from liability under the Open Meetings Act, because official immunity precludes liability for the negligent performance of a discretionary act. Specifically, the trial court held that deciding at a meeting to consider an item not on the pre-published agenda, based on a determination that it is "necessary" to do so, requires the exercise of judgment and is therefore a discretionary act. The court also found that legislative immunity precluded liability because the commissioners were exercising their legislative authority when they passed the ordinance. In addition, the trial court determined that "the

---

[7] The trial court also held that Williams' claim that the salary ordinance was not binding, due to violations of the Open Meetings Act, was time barred. See OCGA § 50-14-1 (b) (2) ("Any resolution, rule, regulation, ordinance, or other official action of an agency adopted, taken, or made at a meeting which is not open to the public as required by this chapter shall not be binding. Any action contesting a resolution, rule, regulation, ordinance, or other formal action of an agency based on an alleged violation of this provision shall be commenced within 90 days of the date such contested action was taken or, if the meeting was held in a manner not permitted by law, within 90 days from the date the party alleging the violation knew or should have known about the alleged violation so long as such date is not more than six months after the date the contested action was taken."). In addition, the trial court determined that Williams, as a private citizen, lacked standing to pursue criminal penalties under the Act. Williams does not challenge these rulings on appeal.

Commission acts as a whole, not as individual commissioners[.]" Because "only individuals — not agencies — " can be held liable for civil penalties under the Act, the court reasoned, Williams' complaint "failed to state a claim for any individual's violation of the [Act]."

2. *Standard of Review*.

> A motion to dismiss for failure to state a claim upon which relief may be granted should not be sustained unless (1) the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof; and (2) the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought.

(Footnotes omitted.) *Anderson v. Flake*, 267 Ga. 498, 501 (2) (480 SE2d 10) (1997). See also OCGA § 9-11-12 (b) (6). The appellate court "review[s] de novo the trial court's ruling on the [defendants'] motion to dismiss, accepting as true all well-pled material allegations in the complaint and resolving any doubts in favor of [the plaintiff]." *Greene County School Dist. v. Circle Y Constr.*, 291 Ga. 111, 112 (728 SE2d 184) (2012).

3. *Salary Ordinance Claims.* Williams averred in his second amended complaint that the members of the DeKalb County governing authority acted unlawfully in passing the salary ordinance,[8] asserting that OCGA § 36-5-24,[9] which delegates the power to county governing authorities to increase their members' pay, is unconstitutional. In the alternative, Williams contends that the commissioners failed to comply with the requirements of OCGA § 36-5-24 when passing the ordinance. Asserting his status as a citizen and taxpayer of DeKalb County, Williams sought prospective declaratory and injunctive relief to stop public funds from being used for the salary increase. Although the trial court held that no form of

---

[8] Thurmond, DeKalb County's Chief Executive Officer, is not a member of the Board of Commissioners. Williams contends that Thurmond was nevertheless complicit in the commissioners' action in passing the ordinance because he benefitted from it, he was aware of its unlawfulness, and he was obligated to veto the ordinance but failed to do so.

[9] That Code section provides, in relevant part, that "[u]nless otherwise provided by local law, the governing authority of each county is authorized to fix the salary, compensation, expenses, and expenses in the nature of compensation of the members of the governing authority[.]" OCGA § 36-5-24 (b). The remaining provisions of the statute either define terms used in the statute or set forth rules applicable to actions taken pursuant to the statute. See OCGA § 36-5-24 (a), (c).

immunity barred Williams' claims against the commissioners or the Chief Executive Officer in their individual capacities, it still dismissed these claims, ruling that Williams lacked standing to bring claims for prospective declaratory or injunctive relief based on the alleged unconstitutionality of OCGA § 36-5-24.[10] "A plaintiff must demonstrate standing separately for each form of relief sought." (Citation and punctuation omitted.) *Center for a Sustainable Coast v. Turner*, 324 Ga. App. 762, 765 (751 SE2d 555) (2013). This is because "the question of standing is a jurisdictional issue." (Citation omitted.) *New Cingular Wireless PCS v. Ga. Dept. of Revenue,* 303 Ga. 468, 470 (1) (813 SE2d 388) (2018).

(a) *Declaratory relief.* Williams' mere status as a citizen or taxpayer[11] is insufficient to confer standing to seek relief under

---

[10] The trial court also addressed the merits of Williams' claim and held OCGA § 36-5-24 to be constitutional and the actions of the members of the county governing authority to be in conformity with the statute. However, if a court determines that a party lacks standing to challenge the constitutionality of a statute, it is improper to address the merits of the constitutional claim. See *Perdue v. Lake,* 282 Ga. 348, 348 (1) (647 SE2d 6) (2007) (question of standing a prerequisite to evaluating merits of challenge to trial court's order declaring statute unconstitutional).

[11] See Division 3 (b) below for a discussion of standing conferred by a plaintiff's status as a citizen or a taxpayer.

OCGA § 9-4-2, the Declaratory Judgments Act, because he does not allege or argue that he faces any uncertainty or insecurity as to his own future conduct. And without any such uncertainty or insecurity, a declaratory judgment is merely advisory and dismissal of a claim for such relief is required. See *Walker v. Owens*, 298 Ga. 516, 518-519 (783 SE2d 114) (2016) ("[W]here the party seeking declaratory judgment does not show it is in a position of uncertainty as to an alleged right, dismissal of the declaratory judgment action is proper; otherwise, the trial court will be issuing an advisory opinion, and the Declaratory Judgment Act makes no provision for a judgment that would be advisory." (citation and punctuation omitted)). Indeed, Williams has cited no authority authorizing a declaratory judgment for this type of claim. Consequently, the trial court did not err in dismissing Williams' claims for declaratory relief.

(b) *Injunctive relief.* As this Court has explained,

> a citizen-taxpayer has standing in equity to restrain public officers from performing acts which the law does not authorize. However, absent expenditures of public revenue or performance of a duty owed to the public[,] a citizen-taxpayer has no standing in equity unless [he or]

she has special damages not shared by the general public. *Juhan v. City of Lawrenceville,* 251 Ga. 369, 370 (306 SE2d 251) (1983). Williams did not allege in his complaint that he suffered any special damages not shared by the general public. Therefore, to survive a motion to dismiss, he must demonstrate that his status as a citizen or as a taxpayer confers standing to seek an injunction against the members of the governing authority in their individual capacities.

(i) *Citizen standing*. Williams, as a citizen of DeKalb County, generally has standing pursuant to OCGA § 9-6-24 to bring a claim seeking to require a public official to perform the public duties that the General Assembly has conferred upon that official.[12] See *Moseley v. Sentence Review Panel*, 280 Ga. 646 (1) (631 SE2d 704) (2006)

---

[12] OCGA § 9-6-24 provides: "Where the question is one of public right and the object is to procure the enforcement of a public duty, no legal or special interest need be shown, but it shall be sufficient that a plaintiff is interested in having the laws executed and the duty in question enforced." Although this Code section is located in the Article pertaining to mandamus, the principles in this section are not confined in their application to petitions for mandamus relief. See, e.g., *SJN Props. v. Fulton County Bd. of Assessors*, 296 Ga. 793, 799 n.7 (770 SE2d 832) (2015) ("We note that we have previously held that OCGA § 9-6-24 and its predecessor statute confer standing to seek enforcement of public duties not only via mandamus but also by injunction.").

("OCGA § 9-6-24 confers standing . . . in those cases wherein the defendant owes a public duty which the plaintiff, as a member of the public, is entitled to have enforced." (citation omitted)). But, with respect to his claims challenging the legality of the salary ordinance, Williams does not seek to enforce a public duty conferred by statute. Rather, he seeks to block the enforcement of an ordinance passed pursuant to OCGA § 36-5-24. Under this circumstance, OCGA § 9-6-24 does not confer citizen standing on Williams to challenge the validity of acts authorized by the statute or to attack the constitutionality of the statute. See *Gaddy v. Dept. of Revenue*, 301 Ga. 552, 560 (1) (b) (802 SE2d 225) (2017) ("OCGA § 9-6-24 does not grant standing to challenge the validity of a public duty authorized by statute, and therefore to attack the constitutionality of the statute." (citation omitted)).

(ii) *Taxpayer standing.* Under Georgia law, Williams' status as a taxpayer generally affords him standing to seek to enjoin the

unlawful expenditure of public funds.[13] But Williams' taxpayer status is not dispositive of whether he has pled a proper claim for injunctive relief as this case now stands. Williams must also demonstrate that the injunctive relief he seeks from the parties he

---

[13] See, e.g., *Lowry v. McDuffie*, 269 Ga. 202, 204 (1) (496 SE2d 727) (1998) (In a suit against the state revenue commissioner and a county tax commissioner, we held that "a taxpayer has standing to contest the legality of the expenditure of public funds of a municipality."); *Savage v. City of Atlanta*, 242 Ga. 671, 671-672 (251 SE2d 268) (1978) (The plaintiff, as a taxpayer of the City of Atlanta, had standing to request that the City's commissioner of finance be enjoined from paying out public funds under the authority of certain ordinances.); *Aiken v. Armistead*, 186 Ga. 368, 380 (1) (198 SE 237) (1938) ("This court has many times held that citizens and taxpayers of counties and municipalities have such interest as will authorize them to maintain actions to enjoin the unlawful disbursement of the public funds of such counties or municipalities." (citations omitted)). We note that, to the extent that some of our taxpayer standing cases allowed equitable relief against *state* officials, they predate the constitutionalization of sovereign immunity and do not address, specifically, who may be sued and in what capacity. See *Lathrop v. Deal*, 301 Ga. 408, 425-444 (III) (801 SE2d 867) (2017). We recognize that our case law has been imprecise in setting forth the parameters of taxpayer standing as it has evolved over the years. But to the extent that these cases simply confirm a taxpayer's standing to seek to enforce a public duty by way of a viable cause of action against a public officer in his or her individual capacity, they remain good law. See *SJN Props.,* 296 Ga. at 799 n.7 ("Insofar as these and similar cases permitted the prosecution of injunction actions against state officials, they now stand abrogated by [*Center for a Sustainable Coast,* 294 Ga. at 603 (2)]; however, to the extent these cases simply confirmed a taxpayer's standing to seek to enforce a public duty by way of some viable cause of action, they remain good law." (emphasis omitted)); *Center for a Sustainable Coast*, 294 Ga. at 603 (2) ("Our decision today does not mean that citizens aggrieved by the unlawful conduct of public officers are without recourse. It means only that they must seek relief against such officers in their individual capacities.").

has sued is capable of being provided *by those parties* and would actually prevent the act he seeks to prevent. After all, Williams is not simply suing the members of the county governing authority in their individual capacities, he is suing them *for specific, allegedly unconstitutional acts done in their official capacities*. See *Lathrop v. Deal*, 301 Ga. 408, 434 (III) (C) (801 SE2d 867) (2017) ("[A]s we have explained at some length, the doctrine of sovereign immunity usually poses no bar to suits in which state officers are sued in their individual capacities for official acts that are alleged to be unconstitutional."). And, given that the purpose of an injunction is to restrain "a threatened . . . act of a private individual . . . which is illegal or contrary to equity and good conscience and for which no adequate remedy is provided at law[,]" OCGA § 9-5-1, Williams must show that the person he has sued is the one committing the act at issue, which, in this case, is the allegedly unlawful expenditure of public funds for a salary increase. See *Lathrop*, 301 Ga. at 434 (III) (C) ("[A]s we have explained at some length, the doctrine of sovereign immunity usually poses no bar to suits in which state

officers are sued in their individual capacities *for official acts* that are alleged to be unconstitutional." (emphasis supplied)); see also *Peacock v. Ga. Municipal Assn.*, 247 Ga. 740, 743 (3) (279 SE2d 434) (1981) ("In a suit to enjoin the expenditure of public funds, the entity or official appropriating the funds is an indispensable party.").

Williams' second amended complaint shows that he seeks to enjoin members of the governing authority from performing a specific action, one he describes as the "unlawful exaction of taxpayer money from the county treasury in regards to the compensation ordinance." However, Williams has not alleged that any of the commissioners are responsible for "exacting" or expending those funds. He alleges that the commissioners exercised their legislative authority in passing the ordinance increasing their salaries; he has not alleged that, *after* the passage of the ordinance, the commissioners performed or could forbear any official acts pertaining to the execution of the ordinance or the appropriation or disbursement of public funds they receive as salaries. Consequently, the trial court did not err in dismissing Williams' claim for injunctive

relief against the commissioners.

Whether the allegations of Williams' complaint against Chief Executive Officer Thurmond, in his individual capacity, show that he performs any official acts pertaining to the execution of the salary ordinance or the appropriation or disbursement of public funds paid as salaries, however, is not clear. Williams broadly asserted in his complaint that Thurmond "has a clear legal duty to supervise, direct and control the administration of the county government" as well as to "execute and enforce all ordinances." All of Williams' specific allegations, however, relate to Thurmond's role in the ordinance's passage, primarily his alleged failure to sign or to veto the ordinance passed by the commissioners. In his complaint, Williams did not focus on Thurmond's executive and administrative duties, and he made no specific allegations that those duties include the power to control the disbursement of funds paid as salaries once the ordinance had been enacted. The record shows that the parties did not brief this issue below, nor did the trial court consider it when ruling on Williams' claim for injunctive relief against Thurmond.

Consequently, we vacate the court's order as it pertains to Williams' claim for injunctive relief against Thurmond and remand the case to the trial court for reconsideration of that issue. The resolution of any claim that Williams seeks to have decided against Thurmond should not be addressed by the trial court until it is clear that Williams has standing to bring it and is, therefore, a proper plaintiff.

4. *Open Meetings Act Claims.* Williams contends that the trial court erred in granting Appellees' motion to dismiss his claim under the Open Meetings Act for civil penalties against the commissioners in their individual capacities.[14] Williams contends that, despite acting collectively, the commissioners as individuals are subject to civil penalties under the Act for participating in a meeting in violation of the Act. He argues that neither official immunity nor legislative immunity applies to an official who violates the Act.

The Open Meetings Act requires all meetings, as that term is

---

[14] The trial court also dismissed Williams' claim under the Open Meetings Act for civil penalties under the Act against Thurmond in his individual capacity. Williams does not challenge this ruling on appeal, and, therefore, no claim against Thurmond for civil penalties remains pending.

defined in the Act, of certain public agencies to be open to the public. OCGA § 50-14-1 (b) (1). As we have explained, "the Act was enacted in the public interest to protect the public — both individuals and the public generally — from 'closed door' politics and the potential abuse of individuals and the misuse of power such policies entail." *City of College Park v. Martin*, 304 Ga. 488, 489 (818 SE2d 620) (2018) (citation and punctuation omitted). See also *Red & Black Pub. Co. v. Bd. of Regents*, 262 Ga. 848, 854 (3) (b) (427 SE2d 257) (1993) ("[T]he policy of this state is that the public's business must be open, not only to protect against potential abuse, but also to maintain the public's confidence in its officials." (citation omitted)).

One of the ways the General Assembly has provided to encourage compliance with the Act by *agencies* is by creating a mechanism for holding accountable the *individuals* who make decisions for the agency. OCGA § 50-14-6 provides in pertinent part:

> Any person knowingly and willfully conducting or participating in a meeting in violation of this chapter shall be guilty of a misdemeanor and upon conviction shall be punished by a fine not to exceed $1,000.00. Alternatively, a civil penalty may be imposed by the court

> in any civil action brought pursuant to this chapter against any person who negligently violates the terms of this chapter in an amount not to exceed $1,000.00 for the first violation. . . . It shall be a defense to any criminal action under this Code section that a person has acted in good faith in his or her actions.

As we have explained, "in general, the Open Meetings Act addresses the obligations of agencies, as defined by the Act, and not specific individuals or governmental officers[,]" but it is significant that OCGA § 50-14-6, the section of the Act that imposes penalties for violations of the Act, "refers to 'any person' who violates the requirements of the Act." *Lue v. Eady*, 297 Ga. 321, 331 (3) (b) (773 SE2d 679) (2015).

> Although the open meetings requirements of the Act apply to agencies, the natural and reasonable reading of OCGA § 50-14-6 is that the General Assembly recognized that decisions to comply, or not, with the Act are made by individuals, or "persons," who are held accountable by the provisions of that Code section.

Id. at 332 (3) (b) (footnote omitted). For this reason, OCGA § 50-14-6 may be enforced only against a person in his or her individual capacity, not in the person's official capacity. Id. at 330-332 (3) (b). See also *Gravitt v. Olens*, 333 Ga. App. 484, 493 (774 SE2d 263)

(2015) ("OCGA § 50-14-6 applies only to natural persons[,]" not to any "artificial entity."). And accountability includes being held *financially* liable personally for civil or criminal penalties. OCGA § 50-14-6.

(a) The first question is whether Williams, as a private person, has standing to seek to impose a civil penalty for noncompliance with the Open Meetings Act. Although we have held that a private citizen lacks standing to enforce the criminal penalty provision,[15] we have not yet decided whether a private citizen may enforce the civil penalty provision and, if so, whether a private citizen may receive any civil penalty paid.[16] The Act authorizes trial courts to impose a

---

[15] See *Lue*, 297 Ga. at 332 n.14 (In the case of the criminal penalty provision of OCGA § 50-14-6, "only the Attorney General has standing to collect the criminal penalty on behalf of the State, which receives any fine paid."); see also *Cardinale v. City of Atlanta*, 290 Ga. 521, 526-527 (722 SE2d 732) (2012) (Private citizens lacked standing to seek to impose a penalty under former OCGA § 50-14-6 for noncompliance with the Open Meetings Act, because the statute then provided only for misdemeanor criminal penalties and private citizens lack standing to initiate a criminal prosecution.).

[16] See *Lue*, 297 Ga. at 332 n.14 (leaving open the question whether the civil penalty provision of the Open Meetings Act is enforceable by private citizens); see also *Blalock v. Cartwright*, 300 Ga. 884, 887 (II) (799 SE2d 225) (2017) (questioning whether a private citizen is eligible to recover civil penalties under the Open Records Act, OCGA § 50-18-70 et seq., given that the

civil penalty "in any civil action brought pursuant to [the Act]," not only actions brought by the Attorney General. OCGA § 50-14-6. The Act expressly authorizes the Attorney General "to bring enforcement actions, either civil or criminal, in his or her discretion as may be appropriate to enforce compliance with [the Act]." OCGA § 50-14-5 (a). This grant of authority does not necessarily mean, however, that *only* the Attorney General has standing to bring civil enforcement actions. Instead, the enforcement authority of the Attorney General is "[i]n addition to any action that may be brought by any person, firm, corporation, or other entity" in a superior court, which "shall have jurisdiction to enforce compliance with the provisions of [the Act]," including by granting an injunction or other equitable relief. Id. This provision plainly contemplates that a private person (or firm, corporation, or other entity) can bring an action to enforce the Act to protect the public from closed-door politics. See *City of College Park*, 304 Ga. at 489. It follows that, although only a prosecutor

Act, in OCGA § 50-18-73 (a), refers only to the Attorney General in relation to the authority to seek civil penalties).

empowered to initiate a criminal prosecution on behalf of the State may seek a criminal penalty under OCGA § 50-14-6, any person, firm, corporation, other entity, or the Attorney General may request that the trial court impose a civil penalty. For these reasons, we conclude that Williams had standing to request that a civil penalty be imposed against the commissioners under OCGA § 50-14-6 and to receive any penalty paid.

(b) The next question is whether Williams' complaint alleged a violation of the Open Meetings Act. OCGA § 50-14-1 (e) (1) requires that, "[p]rior to any meeting, the agency or committee holding such meeting shall make available an agenda of all matters expected to come before the agency or committee at such meeting." Specific requirements for the timing and the location for posting an agenda are set out in the statute. Although making an agenda available is mandatory, the Act provides that "[f]ailure to include on the agenda an item which becomes necessary to address during the course of a meeting shall not preclude considering and acting upon such item." OCGA § 50-14-1 (e) (1). Williams' complaint contains clear

allegations that the commissioners expected to take up the proposed salary ordinance at the February 27, 2018 meeting; that the ordinance was intentionally omitted from the posted agenda; that the commissioners voted, while the meeting was in progress, to add the salary ordinance to the agenda as a "walk-on item"; and that nothing had occurred after the matter was omitted from the agenda that made it necessary to take up the ordinance at that meeting. The complaint also alleges that the commissioners voted on the salary ordinance without public discussion or debate.[17] Williams' complaint, therefore, alleges a violation of the agenda requirements of OCGA § 50-14-1 (e) (1). Cf. *EarthResources, LLC v. Morgan County*, 281 Ga. 396, 398-400 (3) (638 SE2d 325) (2006) (finding no basis for invalidating a commission's action based on a technical violation of the Open Meetings Act's agenda-posting requirement, where the complainant did not allege that the violation deprived the

---

[17] The dissent's caution that courts should be reluctant to look behind the veil of the legislative process is well taken. But the Act plainly involves courts in the enforcement of its requirements under some circumstances. OCGA §§ 50-14-5; 50-14-6. And Williams' complaint contains allegations that, if true, would establish a clear violation of the Act.

complainant of a fair and open consideration of its request or in any way impeded the remedial and protective purposes of the Act).

The trial court's theory that the board acted "as a whole," not as individual persons, in this conduct and that the commissioners are therefore shielded from individual accountability for the alleged agenda violation contravenes the plain text of the Open Meetings Act. Specifically, the agenda requirement applies to any meeting, as that term is defined in the Act. OCGA § 50-14-1 (e) (1); see OCGA § 50-14-1 (a) (3) (A).[18] By definition, a meeting is a gathering of a group of individual persons to collectively carry out the work of governing an agency, as that term is defined in the Act.[19] It follows that,

---

[18] "Meeting" means:

(i) The gathering of a quorum of the members of the governing body of an agency at which any official business, policy, or public matter of the agency is formulated, presented, discussed, or voted upon; or

(ii) The gathering of a quorum of any committee of the members of the governing body of an agency or a quorum of any committee created by the governing body at which any official business, policy, or public matter of the committee is formulated, presented, discussed, or voted upon.

OCGA § 50-14-1 (a) (3) (A).

[19] The Act defines "agency" to mean, inter alia, every county or other political subdivision of the state, as well as every board and commission of each county. OCGA § 50-14-1 (a) (1) (B), (C).

contrary to the trial court's ruling, a person participating in a violation of the Open Meetings Act may be subject to the criminal and civil penalties authorized by OCGA § 50-14-6, notwithstanding the agency or committee acting "as a whole." See *Lue*, 297 Ga. at 330-332 (3) (b).

(c) The next question is whether the commissioners are protected by official immunity. The doctrine of official immunity,

> originally a creature of case law in Georgia, now arises out of Article I, Section II, Paragraph IX (d) of the Georgia Constitution, which establishes that public employees . . . may be held personally liable for negligence relating to their official duties only when performing "ministerial" acts; "discretionary" acts are only subject to suit when performed with actual malice or intent to cause injury.

*Barnett v. Caldwell*, 302 Ga. 845, 847-848 (II) (809 SE2d 813) (2018) (citations omitted).[20] "In the context of Georgia's official immunity

---

[20] Except as specifically provided by the General Assembly in a tort claims act,

> all officers and employees of the state or its departments and agencies may be subject to suit and may be liable for injuries and damages caused by the negligent performance of, or negligent failure to perform, their ministerial functions and may be liable for injuries and damages if they act with actual malice or with actual intent to cause injury in the performance of their official functions.
> . . .

doctrine, 'actual malice' requires a deliberate intention to do wrong." *Wyno v. Lowndes County*, 305 Ga. 523, 531 (3) (824 SE2d 297) (2019) (citation and punctuation omitted). "A 'deliberate intention to do wrong' such as to constitute the actual malice necessary to overcome official immunity must be the intent to cause the harm suffered by the plaintiffs." *Murphy v. Bajjani*, 282 Ga. 197, 203 (4) (647 SE2d 54) (2007). Assuming without deciding that determining whether to take up an item not on the pre-published agenda for a meeting is necessarily a discretionary act, we conclude that Williams' complaint sufficiently alleges that the commissioners acted with actual malice in intentionally violating the agenda requirements of the Act — a criminal act. Consequently, taking the allegations of Williams' complaint as true for the purpose of reviewing the dismissal of the complaint, the commissioners are not entitled at

---

Ga. Const. of 1983, Art. I, Sec. II, Par. IX (d) (as amended in 1991). Pursuant to this grant of constitutional authority, the General Assembly enacted the Georgia Tort Claims Act, OCGA § 50-21-20 et seq., in 1992. County officials like the commissioners and the Chief Executive Officer qualify under Article I, Section II, Paragraph IX (d). See *Gilbert v. Richardson*, 264 Ga. 744, 747 (2) (452 SE2d 476) (1994).

this stage to official immunity from the penalty provisions of the Open Meetings Act.

(d) We also find no merit in the trial court's determination that Williams' claim is barred by legislative immunity. While some immunities for members of the General Assembly are provided in our Constitution,[21] legislative immunity for local officials arises from statutes or from common law.[22] An immunity conferred by statute or common law may be abrogated by statute, and the Open Meetings

---

[21] Ga. Const. of 1983, Art. III, Sec. IV, Par. IX ("The members of both houses shall be free from arrest during sessions of the General Assembly, or committee meetings thereof, and in going thereto or returning therefrom, except for treason, felony, or breach of the peace. No member shall be liable to answer in any other place for anything spoken in either house or in any committee meeting of either house.").

[22] See *City of Atlanta v. Mitcham*, 296 Ga. 576, 577 (769 SE2d 320) (2015) (Legislative immunity for municipal corporations is created by statute, OCGA § 36-33-1.); *Village of North Atlanta v. Cook*, 219 Ga. 316, 319 (1) (133 SE2d 585) (1963) (noting, in discussing legislative immunity, that under Georgia law "the courts will not inquire into the motives of a municipal council in the enactment of an ordinance" (citations omitted)); *Clein v. City of Atlanta*, 164 Ga. 529, 541 (4) (139 SE 46) (1927) (Courts cannot inquire into the motive of the officials who enact an ordinance, "nor can they set the same aside, if it is not arbitrary and unreasonable, is not ultra vires, or is not unconstitutional." (citations omitted)); see also *Harlow v. Fitzgerald*, 457 U. S. 800, 807 (102 SCt 2727, 73 LE2d 396) (1982) ("The absolute immunity of legislators, in their legislative functions . . . now is well settled." (citation and punctuation omitted)).

Act plainly abrogates legislative immunity for local officials, to the extent of the Act's requirements, by establishing that criminal and civil penalties may be imposed upon individual legislative officials.[23] Because Williams' complaint alleges that the commissioners deliberately conducted legislative business in an illegal manner, contrary to the requirements of the Open Meetings Act, the commissioners are not entitled to dismissal of the complaint based on legislative immunity.

For the foregoing reasons, the trial court erred in dismissing Williams' claim for civil penalties against the commissioners individually for violating the Open Meetings Act.

*Judgment affirmed in part, reversed in part, and vacated in part, and case remanded. Melton, C. J., Nahmias, P. J., and Blackwell, Boggs, Peterson, and Warren, JJ., concur. Bethel, J., concurs in part and dissents in part.*

BETHEL, Justice, concurring in part and dissenting in part.

As the plain language of the Open Meetings Act makes clear,

---

[23] Cf. *SJN Props.*, 296 Ga. at 799 (2) (b) (ii) n.6 (Because the relief expressly provided in the mandamus statute, OCGA § 9-6-20, by its very nature may be sought only against public officials, this amounts to a specific waiver of sovereign immunity when public officials are sued in their official capacities.).

although a posted agenda for a public meeting is required and must include items which are "expected" to come before the body in the meeting, the failure to list an item of business in the agenda "shall not preclude considering and acting upon" that item if it "becomes necessary" to do so during the course of the meeting. OCGA § 50-14-1 (e) (1). In my reading, this Code section provides legislative bodies subject to the Open Meetings Act with broad discretion to control the content of their agendas. Specific to this case, I believe questions as to whether the DeKalb County Commissioners were "expected" to address the issue of salaries for themselves and the County's Chief Executive Officer at the January 19, 2018 meeting or whether the Commissioners found it "necessary" to add that issue to the meeting's agenda while it was in progress are questions conclusively resolved by the decision of the Commissioners to take action on the issue. For this reason, I would affirm the trial court's dismissal of Williams' claims under the Open Meetings Act. Therefore, while I join Divisions 1, 2, and 3 of the majority opinion, I respectfully dissent with respect to Division 4.

OCGA § 50-14-1 (e) (1) requires, in relevant part:

>    Prior to any meeting, the agency or committee holding such meeting shall make available an agenda of all matters *expected* to come before the agency or committee at such meeting. . . . Failure to include on the agenda an item which becomes *necessary* to address during the course of a meeting *shall not preclude considering and acting upon such item*.

(Emphasis supplied.) This Code section requires an agency or committee subject to the Act to post an agenda prior to any meeting at which it takes official action. The failure to do so may negate any official actions taken at the meeting. See OCGA § 50-14-1 (b) (2) ("Any resolution, rule, regulation, ordinance, or other official action of an agency adopted, taken, or made at a meeting which is not open to the public as required by this chapter shall not be binding. . . ."). See also *EarthResources, LLC v. Morgan County*, 281 Ga. 396 (638 SE2d 325) (2006) (discussed infra). However, in my view, the reach of this Code section into the operation of legislative bodies ends with this sort of objective analysis and does not reach subjective questions like the one presented here.

    We have rightly recognized that the setting of items on a

meeting's agenda is a discretionary act that will not subject a board or its members to mandamus when they refuse to include an item that is requested by a member of the public. *James v. Montgomery County Bd. of Ed.*, 283 Ga. 517, 517 (661 SE2d 535) (2008) (construing a statute that provided, "Every . . . board of education shall constitute a tribunal for hearing and determining any matter of local controversy in reference to the construction or administration of the school law, with power to summon witnesses and take testimony *if necessary*." (citation and punctuation omitted; emphasis supplied)). We should likewise hold that the language of the Open Meetings Act gives courts no authority to second-guess a legislative body's determination concerning what it "expected" to consider at a meeting and whether it became "necessary" to add to the agenda of an otherwise lawful meeting.

Although we have long noted that "[t]he fact that a controversy has political overtones does not place it beyond judicial review[,]" (citation and punctuation omitted) *Owens v. City of Greenville*, 290 Ga. 557, 558 (1) (722 SE2d 755) (2012), courts should be especially

reluctant to look behind the veil of the legislative process and the motivations of legislators at any level of government. Where legislative bodies are alleged to have violated clear technical requirements susceptible to traditional judicial evaluation, such as whether the legislative body posted an agenda prior to a public meeting, it is proper for us to determine whether they have complied with the Open Meetings Act. But where a plaintiff asks the courts to consider whether a legislative body has violated a provision of law which, as in this case, clearly vests discretion in that body — such as the determination as to whether some action is "expected" or "necessary" — our courts should decline to substitute their judgment for the determination made by the legislative body. Cf. *Capitol Distrib. Co. v. Redwine*, 206 Ga. 477, 484 (1) (57 SE2d 578) (1950) (holding that with regard to the General Assembly's compliance with constitutional requirements for enactment of laws, including the requirement that the title of the bill be read three times, "A duly enrolled act, properly authenticated by regular presiding officers of both houses of the General Assembly, approved by the Governor,

and deposited with the Secretary of State as an existing law, will be conclusively presumed to have been enacted in accordance with constitutional requirements." (citation and punctuation omitted)). See also Ga. Const. of 1983, Art. III, Sec. V, Par. VII ("The title of every general bill and of every resolution intended to have the effect of general law . . . shall be read three times and on three separate days in each house before such bill or resolution shall be voted upon; and the third reading of such bill and resolution shall be in their entirety when ordered by the presiding officer or by a majority of the members voting on such question in either house.").

This approach is in keeping with our courts' history of deference to legislative bodies' efforts to comply with the requirements of the Open Meetings Act. That approach derives both from the separation of legislative and judicial power and the caution courts should heed before intruding upon the operations of legislative bodies.

With respect to the agenda requirement, particularly, rather than shackling the hands of a legislative body subject to the Act to a

highly technical rule, this provision appears instead to afford great flexibility regarding the content of the agendas legislative bodies subject to the Act are required to post,[24] including by giving them broad latitude to amend such agendas with items that had been omitted. See *Lancaster v. Effingham County*, 273 Ga. App. 544, 546 (2) (615 SE2d 777) (2005) (omission of an item from a posted agenda did not prevent the county board of commissioners from discussing and acting upon that item at the meeting). This Court has even gone as far as to excuse technical violations of the agenda requirement where there was no allegation or evidence that failure to comply with the exact specifications of the Act resulted in harm by depriving anyone of fair and open access to meetings subject to the Act. See *EarthResources*, supra, 281 Ga. at 400 (3).

Here, it appears from Williams' allegations that notice of the

---

[24] This was not the only option available to the General Assembly when it enacted the Open Meetings Act. The General Assembly might limit agencies and committees subject to the Act to consideration only of those items listed on the agenda posted prior to a public meeting and forbid them from amending the agenda while the meeting is in progress. But that is not what the Open Meetings Act provides.

meeting was posted in compliance with OCGA § 50-14-1 (d) (3), that an agenda was posted in advance of the meeting, that the meeting itself was held in public, and that no member of the public was denied access to the meeting. Failure of the Commissioners to comply with these requirements *might* have vitiated the action they took relative to their compensation. See *EarthResources*, supra. But Williams asks us to go a step further — to determine what an agenda must say and under what conditions a legislative body will be permitted to add to it while a meeting is in progress in order to be in compliance with the Act. By asking the courts to substitute their own judgment for that of the Commissioners as to whether they were "expected" to consider salaries for themselves and the Chief Executive Officer at the meeting or whether it became "necessary" to add that item to the agenda from which it had been omitted, Williams' lawsuit asks the courts to engage in a task for which they are ill-equipped and which has been committed wholly to the discretion of legislative bodies subject to the Open Meetings Act. Because I believe the language of the Act confers on the

Commissioners the sole authority to decide when and whether it becomes necessary to take up an item that was not listed on the agenda, I would affirm the dismissal of Williams' claims under the Open Meetings Act.

DECIDED MARCH 13, 2020.

Open Meetings Act. DeKalb Superior Court. Before Judge Adams.

*Thomas V. Burch, John L. Kennerly*, *Addison Smith,* for appellant.

*Viviane H. Ernstes, Bennett D. Bryan, Laura K. Johnson, Terry G. Phillips, Shaheem M. Williams; Jarrard & Davis, Kenneth E. Jarrard; Small Herrin, Gus H. Small, Brent W. Herrin, Benjamin S. Klehr*, for appellees.

*Larry W. Ramsey, Jr., Kelly L. Pridgen*, amici curiae.